JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Nashondala Young ("appellant"), appeals from a June 29, 2006 judgment of the Cuyahoga County Court of Common Pleas, finding her guilty of two counts of felonious assault and sentencing her to six years in prison. After reviewing the facts and the pertinent law, we affirm.
 {¶ 2} On November 4, 2005, the Cuyahoga County Grand Jury indicted appellant on one count of felonious assault, in violation of R.C.2903.11(A)(1), for knowingly causing serious physical harm to Niesha Langford ("victim"); and two counts of felonious assault, in violation of R.C. 2903.11(A)(2), for knowingly causing serious physical harm to the victim by means of a deadly weapon or dangerous ordnance. All three counts had mandatory one-and three-year firearm specifications. Appellant entered a plea of not guilty to the charges. *Page 3 
 {¶ 3} The case proceeded to a jury trial. The following evidence was presented at trial.
 {¶ 4} The state first presented the victim. She attended high school with her sister, Quiana Gray ("victim's sister"), and her friends, Chanel Curry ("Chanel"), Chariah Curry ("Chariah"), and Diana Greene ("Greene"). Toward the end of the 2005 school year, the victim and Greene became involved in a fight with two other girls they went to school with, Moara Mims ("Mims") and Argentina. Appellant arrived at some point driving a "tannish"colored vehicle and watched the fight.
 {¶ 5} Throughout the summer of 2005, Mims and Argentina threatened the victim and Greene by telephone. On August 14, 2005, the victim, Chanel, Chariah, the victim's sister, and her sister's boyfriend were together on the boyfriend's front porch. Around 9:00 p.m., the victim saw appellant, Mims, Argentina, and a male named Derek, circle slowly around the block three or four times, in the same tan car that appellant had driven to school on the day of the fight. She heard threats yelled from the car.
 {¶ 6} The victim called her mother, Catherine Gray-Cox ("victim's mother"), who told her to go to her cousin's house. The victim, Chanel, Chariah, and the victim's sister got a ride as far as Fairfax Park, located on East 83rd Street, Cleveland, Ohio. They planned to walk the rest of the way to the cousin's house. But soon after they began walking, appellant, Mims, Argentina, and Derek pulled up *Page 4 
in the tan car and got out.[1] The victim testified that appellant, "encourag[ed] [Mims] to fight me and just pumped her hand up, and things like that * * * [s]he was basically saying * * * ya'll little bitches, and just dogging us, and it was just arguments going back and forth."
 {¶ 7} The victim said that her mother arrived and "she was trying to reason with [appellant], and trying to stop everything from happening." Mims then punched the victim and they began to fight. Argentina also hit the victim in the back with a baseball bat. A few minutes later, the victim heard three or four gunshots and she ran. Chanel told the victim that she was cut and the victim's mother drove her to the hospital. She received a total of two hundred stitches in her face, arm, stomach, and back. She also had to have plastic surgery on her face.
 {¶ 8} The victim was not able to identify appellant from a photo array. She stated that she told detectives that appellant had a gun on the night of the incident, but that she never personally saw it. She also informed detectives that she saw Derek with a gun.[2]
 {¶ 9} On cross-examination, the victim stated that she never saw the weapon that cut her. She also did not know who fired the gunshots. *Page 5 
 {¶ 10} The victim's sister testified next. On August 14, 2005, she saw Mims and Argentina drive by her boyfriend's house in a "goldish Intrepid." They shouted, "we gonna beat your ass when you all come outside[.]" The victim's sister stated that she had previously seen appellant drive Mims and Argentina in that same car.
 {¶ 11} The victim's sister said that when appellant, Mims, Argentina, and Derek pulled up at Fairfax Park in the Intrepid, they got out of the vehicle.[3] Appellant "was like basically telling people to fight * * * saying things like, oh, we got guns and whatever." She further stated that appellant said to the victim, "why don't you fight [Mims]?" Argentina then grabbed a bat from the trunk and the victim's sister heard her say "we don't fight fair."
 {¶ 12} The victim's sister also testified that her mother came to Fairfax Park and "[s]he tried to go talk to [appellant] and reason with her, like trying to say, you get your people, and I grab my people, and leave us alone[.]" But, "[appellant] wasn't trying to reason with her. It's like she wanted the fight to happen." Argentina then hit the victim with the bat and also hit Chanel's shoulder blade. The victim's sister heard seven or eight gunshots but did not see who fired the gun. She jumped in her mother's car and they drove the victim to the hospital. She believed that the victim was cut with a small razor blade that was between Mims's fingers. She stated *Page 6 
that it is common for girls to place a razor blade between their fingers when they fight, so that when they hit someone, they also cut them.
 {¶ 13} On cross-examination, the victim's sister stated that she never saw appellant touch the victim. Further, a detective only showed her one photograph of appellant, but she could not identify her. She also saw Derek with a gun on a day prior to the incident.
 {¶ 14} The state then presented the victim's mother to testify. At Fairfax Park, she said she approached appellant because she looked older than the other girls, to try to reason with her, and break up the fight. The victim's mother stated, "[s]he was screaming and hollering at me, like just going all off like, and I didn't realize there was no reasoning with her." She also said that appellant looked pregnant.
 {¶ 15} The victim's mother then saw appellant get a two-by-four from her trunk and run toward the victim with it. She pushed the victim out of the way so she did not get hit. Appellant went back toward her car. At that time, the victim's mother then heard five or six gunshots. She noticed the victim bleeding, so she drove her to the hospital.
 {¶ 16} Chariah testified next. She stated that on August 14, 2005, appellant drove a "tannish like golden car." While at Fairfax Park, she heard someone from that vehicle scream, "there she is," and the car pulled up in front of them. The victim's mother then arrived and attempted to talk to appellant and stop the *Page 7 
"commotion". Chariah heard appellant say, "anybody who wants to fight Argentina, who wants to fight [Mims.]" Then the fight occurred. She later heard approximately seven gunshots. She stated that Derek had a gun and shot it into the air. Chariah testified that Derek was the only person standing in the location of the gunshots.
 {¶ 17} Next, Chariah said that appellant approached her and asked if she wanted to fight Argentina. Appellant swung a "stick looking thing" at her and then pulled out a gun and pointed it at her. Chariah described the gun as medium sized. Chanel grabbed Chariah and they ran to the victim's mother's car. A few days later, Chariah identified appellant from a photo array.
 {¶ 18} On cross-examination, Chariah stated that it was dark outside when the fight occurred. She thought appellant pointed a gun at her, but she was not sure if it actually was a gun. She also stated that she did not see Derek shoot the gun, but she observed his arm in the air and at the same time, she heard gunshots.
 {¶ 19} Keith Thompson ("Detective Thompson"), a detective for the City of Cleveland Police Department, testified next. A few days after the incident, the victim and her mother told him the names of the suspects, a description of appellant's vehicle, and the license plate number. He retrieved appellant's photograph and address from Bureau of Motor Vehicles. He determined the license plate number belonged to appellant's vehicle. He also stated that Chanel and Chariah made a positive identification of appellant from a photo array. *Page 8 
 {¶ 20} At the close of the state's case, appellant moved for a Crim.R. 29 acquittal. The court denied the motion.
 {¶ 21} Appellant presented Mims as her first witness. Mims invoked her Fifth Amendment right against self incrimination.
 {¶ 22} Appellant testified next. She believed that she was at her home on the night of August 14, 2005. The following day, Mims and Argentina called her and told her about the incident at Fairfax Park. She said that Mims and Argentina are her cousins.
 {¶ 23} Appellant stated that she would pick Mims and Argentina up from school and drive them to the mall. Appellant testified that in August 2005, she drove a gray1999 Dodge Intrepid. She also said that in September 2005, her vehicle was broken into and she made a police report where she described her car as gray. She further testified that she does not own a handgun.
 {¶ 24} On cross-examination, appellant stated that in August 2005, she was four or five months pregnant. Also, Mims or Argentina told her that Derek fired a gun the night of the incident.
 {¶ 25} Appellant rested her case. The state requested the court to include the complicity instruction in the jury charge and the court overruled the appellant's objection.
 {¶ 26} The state then presented Greene as a rebuttal witness. Greene said that when she was friends with Mims and Argentina, they would "hang out" at *Page 9 
appellant's house. One time, when she was spending the night at appellant's house, she said she heard appellant, Mims, and Argentina, "talking about fighting, and joking around, like don't make me get my strap." She said a strap is what they called a gun, but she never saw it.
 {¶ 27} On the day of the fight at the school, Greene heard Mims call appellant and say, "make sure you are up here at 2:50 when school let's [sic] out." Appellant got out of her "goldish-tan" car that day and confronted Greene. About five minutes after the fight ended, Greene saw appellant driving Mims and Argentina. They stopped the car and appellant confronted Greene again and they ended up getting into a fight. She remembered appellant hitting her one time. However, she was in New Jersey with her family on August 14, 2005.
 {¶ 28} After the state's rebuttal witness, appellant renewed her Crim.R. 29 motion. The court denied it.
 {¶ 29} The jury returned a guilty verdict on counts one and two, felonious assault, in violation of R.C. 2903.11. However, on the third count of felonious assault, the jury found appellant not guilty and that appellant did not have a firearm on all counts and specifications.
 {¶ 30} On June 26, 2006, the trial court sentenced appellant to six years in prison on each of the two counts of felonious assault, to run concurrent to one another. The trial court also informed appellant that she would have to serve five years of postrelease control following her release from prison. *Page 10 
 {¶ 31} It is from this judgment which appellant appeals, raising the following four assignments of error:
 {¶ 32} "[1.] Appellant's convictions for felonious assault in counts one and two are against the manifest weight of the evidence.
 {¶ 33} "[2.] Appellant's convictions for counts one and two were not supported by sufficient evidence.
 {¶ 34} "[3.] The trial court committed error by giving improper and substantially prejudicial jury instructions for complicity.
 {¶ 35} "[4.] The trial court abused its discretion in the execution of an excessive and unduly harsh prison sentence of six years."
 {¶ 36} In her first assignment of error, appellant argues that her convictions were against the manifest weight of the evidence.
 {¶ 37} With respect to manifest weight of the evidence, the Ohio Supreme Court has stated:
 {¶ 38} "[although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. [State v. Robinson (1955), 162 Ohio St. 487 * * *]. Weight of the evidence concerns `the inclination of the greater amount ofcredible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they *Page 11 
shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. (Emphasis added.) Black's, supra, at 1594.
 {¶ 39} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. [Tibbs v.Florida (1982), 457 U.S. 31, 42]. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all the reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." State v.Thompkins, (1997), 78 Ohio St.3d 380, 387.
 {¶ 40} With this standard in mind, we conclude that appellant's convictions were not against the manifest weight of the evidence. The victim, her sister, her mother, and Chariah were consistent and reliable in their account of the events. Detective Thompson and Greene also supported their testimony.
 {¶ 41} Testimony showed that the victim, her sister, Chariah, and Chanel were at Fairfax Park when appellant drove and stopped her tan-colored vehicle with Mims, *Page 12 
Argentina, and Derek in it. Testimony further demonstrated that appellant was encouraging the girls to fight. The victim stated that appellant was urging Mims to fight her, and pumping her hands up. The victim's sister and Chariah also said that appellant was telling people to fight. The victim's mother testified that when she arrived, she was trying to get appellant to reason with her, since she appeared to be the oldest one there.
 {¶ 42} Testimony further evinced that Mims began to hit and cut the victim and that Argentina hit the victim on the back with a baseball bat. Several witnesses heard gunshots and ran. The victim was seriously and permanently injured as a result of the fight, and had to have two hundred stitches in her face, arm, stomach, and back, and she also had to have plastic surgery on her face.
 {¶ 43} After reviewing the evidence, we conclude that the jury did not lose its way and create such a manifest miscarriage of justice. Further, the amount of reliable and consistent evidence presented by the state outweighed any inconsistencies in testimony and substantially supported each conviction. Thus, appellant's first assignment of error is overruled.
 {¶ 44} In her second assignment of error, appellant asserts that her convictions are against the sufficiency of the evidence.
 {¶ 45} In Thompkins, supra, at 386, the Ohio Supreme Court explained that sufficiency of the evidence and the weight of the evidence are not synonymous legal concepts. They are "both quantitatively and qualitatively different." Id. *Page 13 
 {¶ 46} The Supreme Court of Ohio further explained:
 {¶ 47} "[w]ith respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support a jury verdict as a mater of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R.29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustained a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. [Robinson, supra.] In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. [Tibbs, supra,] citing Jackson v. Virginia (1979),443 U.S. 307 * * *. (Parallel citations omitted) Id. at 386-387.
 {¶ 48} When determining sufficiency of the evidence, we must consider whether, after viewing the probative evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense proven beyond a reasonable doubt. State v.Shaffer, 11th Dist. No. 2002-P-0133, 2004-Ohio-336, at _17. Further, we note that the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 49} Appellant was convicted of two counts of felonious assault. Under R.C. 2903.11(A), "[n]o person shall knowingly do either of the following: *Page 14 
 {¶ 50} "(1) [c]ause serious physical harm to another * * *
 {¶ 51} "(2) [c]ause or attempt to cause physical harm to another * * * by means of deadly weapon or dangerous ordnance."
 {¶ 52} In addition, appellant was convicted in connection with the complicity statute, R.C. 2923.03(A)(2), which provides, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]"
 {¶ 53} The Supreme Court of Ohio has stated that mere presence of an accused at the scene of the crime is not sufficient proof, in and of itself, that the accused was an aider or abettor. State v. Widner (1982)69 Ohio St.2d 267, 269. "To support a conviction for complicity by aiding and abetting * * *, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principle in the commission of the crime, and that the defendant shared in the criminal intent of the principle. Such intent may be inferred from the circumstances surrounding the crime." State v.Johnson (2001), 93 Ohio St.3d 240, 245-246.
 {¶ 54} A review of the record indicates that there is sufficient evidence to support appellant's convictions. The evidence shows that on August 14, 2005, appellant assisted Mims and Argentina and shared in their criminal intent. Appellant drove them to where the victim, her sister, Chanel, and Chariah were "hanging out." Threats were heard coming from appellant's car. Again, appellant drove Mims and *Page 15 
Argentina to Fairfax Park. As explained in the previous assignment of error, appellant also encouraged the girls to fight the victim. Appellant was not merely present when the fight occurred. The victim was seriously and permanently injured from the fight.
 {¶ 55} Therefore, we conclude that there is sufficient evidence by which a jury could find that all the elements of the instant offenses were proven beyond a reasonable doubt. As such, appellant's second assignment of error is overruled.
 {¶ 56} In her third assignment of error, appellant contends that the trial court gave an improper and prejudicial jury instruction when it included complicity in the jury charge.
 {¶ 57} As stated previously, under R.C. 2923.03(A)(2), "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]"
 {¶ 58} It is well established that the trial court should not instruct the jury where there is no proof to support an issue. Riley v.Cincinnati (1976), 46 Ohio St.2d 287, 297. "`The fundamental rule for determining the scope of the instruction to be given by the court is that it should be adapted to and embrace all issues made by the pleadings and the evidence. * * * The instruction should be broad enough to properly cover the issues presented for consideration, or all the facts in issue which the evidence tends to establish or disprove.'"Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, fn.3, quoting, 89 Ohio Jurisprudence 3d (1989) 354, 355, Trial, *Page 16 
Section 289. Requested jury instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction.Murphy, supra, at 591.
 {¶ 59} In the case sub judice, the evidence established that appellant aided and abetted Mims and Argentina. Appellant assisted and encouraged Mims and Argentina in the commission of their crimes and appellant shared in their criminal intent. Thus, the trial court did not error by instructing the jury on complicity. Accordingly, appellant's third assignment of error is overruled.
 {¶ 60} In her fourth assignment of error, appellant maintains that the trial court abused its discretion when it sentenced her to six years in prison. She also asserts that the trial court did not make appropriate findings to justify a sentence beyond the minimum statutory requirement.
 {¶ 61} R.C. 2929.11 and R.C. 2929.12, are general judicial guides for every sentencing. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, at _36-37. R.C. 2929.11(A) states that the court "shall consider" the overriding objectives of felony sentencing, which are "to protect the public from future crime by the offender and others and to punish the offender." Id. at _36. To accomplish those purposes, the court shall also consider the need for incapacitation, deterrence, rehabilitation, and restitution. Id. R.C. 2929.11(B) further requires that the sentence "be reasonably calculated to obtain the two overriding goals of felony sentencing" and be "commensurate with and not demeaning to the seriousness of the offender's *Page 17 
conduct and it's impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."Foster, at _36.
 {¶ 62} R.C. 2929.12 allows the sentencing judge discretion "`to determine the most effective way to comply with the purposes and principles of sentencing.' R.C. 2929.12(A) directs that in exercising that discretion, the court shall consider, along with any other `relevant' factors, the seriousness factors set forth in divisions (B) and (C) and the recidivism factors in divisions (D) and (E) of R.C.2929.12. These statutory sections provide a nonexclusive list for the court to consider." Foster, at _37. The Supreme Court of Ohio made it clear however, "there is no mandate for judicial factfinding in the general guidance statutes. The court is `merely to consider' the statutory factors." Id. at _42.
 {¶ 63} Further, R.C. 2929.14(B) no longer requires judicial factfinding before a prison sentence is imposed within the appropriate range of 2929.14(A). Id. at paragraph two of the syllabus. "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus.
 {¶ 64} However, in the instant case, the trial court did provide reasons for its sentence. The trial court stated that appellant helped and participated in the crime, the victim was seriously injured when her face, arm, back, and stomach were cut *Page 18 
with a razor, the victim was also hit on the head with a baseball bat, underwent plastic surgery, and has keloids and permanent scars. The court further stated that appellant has a violent, mean, and a vicious personality, and has no remorse. The court also emphasized, "what kind of society would we be encouraging if we're encouraging young adults to go out, grab our young people and engage in this kind of conduct. It just can't happen."
 {¶ 65} Therefore, we conclude that the trial court adequately complied with the requirements of R.C. 2929.11 and R.C 2929.12, and that the sentence was proper. Thus, appellant's fourth assignment of error is overruled.
 {¶ 66} Accordingly, the judgment of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 19 
ANTHONY O. CALABRESE, P.J., and KENNETH A. ROCCO, J., CONCUR
[1] The victim made an in court identification of appellant.
[2] It is unclear from the victim's testimony if she saw Derek with a gun on the night of August 14, 2005, or only saw it prior to that day.
[3] She also stated a female named Loreal was in the vehicle. *Page 1