JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Gregory Rose appeals from his convictions on two counts of felonious assault against police officers and one count of having a weapon while under disability. He argues that counsel performed ineffectively in several respects, that the state's evidence was legally deficient, and that the court erred by admitting evidence contained in 911 emergency call tapes. We find no error and affirm.
 {¶ 2} The state offered evidence showing that a 911 caller reported a male outside on the street "beating a woman with a gun * * *." Among those dispatched to the scene were Officer Laura Bell and her partner. When they arrived, Bell noticed Rose running between two houses. She testified that she and her partner split up-she ran up a narrow, grassy space between the houses and her partner ran up the driveway. A fence enclosed the yard, cutting off Rose's ability to escape. As Bell turned the corner of the house, she testified that she almost ran into Rose, who was holding a firearm in one hand and "fumbling with the fence." Finding herself without cover, she pointed her gun at Rose and ordered him to drop his gun. Bell saw Rose point the gun at her and pull the trigger, so she responded by firing two shots at him. She saw Rose again pull the trigger, and responded by firing three more shots. Bell began backing up to find cover, and fired all of her rounds in the process. She tried to switch ammunition cartridges, but her gun malfunctioned, preventing her from reloading the gun. *Page 4 
 {¶ 3} Officer Shawn Howard came upon Bell's position as she was attempting to reload her gun. He saw Rose standing near the side of the house, with his chest up against the house and pointing a firearm in their direction. Howard could not shoot because Bell was in his line of fire as she moved backward to find cover. He told Bell to "drop," and once she did, he fired two rounds from his service shotgun. Rose then opened the gate to the fence and went into the backyard of a house.
 {¶ 4} Police Sergeant Brian Miller testified that he was manning the supervisor's car during his shift and responded to the scene. He saw Rose coming down a driveway, running slowly and carrying a gun in his hand. Miller watched Rose change directions and run back up the driveway. Miller exited his vehicle and heard gunfire, with a woman's voice yelling "drop the gun." He flanked Rose's position and entered a backyard, placing Rose between him and officers Bell and Howard. Miller said that Rose was standing along the side of the house with his gun pointed upward. Miller's position put officers Bell and Howard in his line of fire, so he tried to obtain a better position. As he did so, Rose went through the gate and walked to the back door of the house. Miller said Rose tried to force his way into the back door of the house, but failed. Rose turned with the gun held up, "at a ready position[.]" Rose had not seen Miller, but Miller became concerned that if Rose did see him, he would be in a compromising position. Miller then fired two shots at Rose. Rose fell to the ground, dropping the gun. *Page 5 
 {¶ 5} Rose was struck by shotgun fragments along his right side, from the elbow to just below his right knee. No other rounds struck him. One of the emergency medical technicians ("EMT") who responded to the scene said that Rose was ambulatory and in handcuffs when he arrived. The EMT described Rose as "uncooperative" and said that when he asked Rose why he did not drop the gun as ordered, Rose said, "well, they had guns, so why should I?" Another EMT testified that in response to her inquiry as to how he sustained his wounds, Rose said "he was fighting with his girlfriend, that he had a gun, that he did not put it down, and that he was shot by the police, because he did not put the gun down." Rose also told the EMTs that he was under the influence of alcohol and marijuana.
 {¶ 6} The gun recovered from Rose had four spent bullet casings in the cylinder, along with two live rounds. A police detective testified that if a spent casing were chambered, the gun would not fire. The detective also stated that it was possible that Rose could have pulled the trigger of the gun only partially so that the hammer would strike the ignition chamber of the gun, but not with enough force to ignite the primer and discharge the round.
 {¶ 7} Rose defended on the theory that he did not possess a gun at any time during the confrontation, and that the absence of blood on the scene suggested that the police planted the gun after he had been shot.
 I *Page 6 {¶ 8} Rose's first, second and third assignments of error raise issues relating to the effectiveness of counsel. He argues that (1) counsel failed to seek a dismissal of all charges on speedy trial grounds, (2) counsel failed to seek a specific jury instruction relating to felonious assault and (3) counsel was unprepared for trial.
 A {¶ 9} We employ a two-part test for determining claims of ineffective assistance of counsel in criminal prosecutions. The defendant must first show that his attorney's performance "fell below an objective standard of reasonableness." The defendant must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See State v.Bradley (1989), 42 Ohio St.3d 136, at paragraphs two and three of the syllabus; Strickland v. Washington (1984), 466 U.S. 668. Both prongs of this test must be established in order to establish a claim of ineffective assistance of counsel. Bradley, 42 Ohio St.2d at 143;State v. Madrigal, 87 Ohio St.3d 378, 389, 2000-Ohio-448.
 B {¶ 10} Rose first argues that counsel failed to file a motion to dismiss the indictment on speedy trial grounds. He maintains that he was held in jail, in lieu of bail, for well in excess of 90 days because he was arrested on April 25, 2006 but trial did not commence until November 30, 2006. *Page 7 
 {¶ 11} A person charged with a felony must be tried within 270 days after arrest. See R.C. 2945.71(C)(2). If the person is held in jail in lieu of bail, each day is counted as three days. See R.C. 2945.71(E). This is referred to as the "triple count provision" of the speedy trial statute.
 {¶ 12} In State v. Anderson, Cuyahoga App. No. 87828, 2007-Ohio-5068, we stated:
 {¶ 13} "[t]he triple-count provision in R.C. 2945.71(E) applies only to defendants held in jail in lieu of bail solely on the pending charge.State v. Brown, 64 Ohio St.3d 476, 479, 1992-Ohio-96; State v.MacDonald (1976), 48 Ohio St.2d 66, paragraph one of the syllabus;State v. Johnson, Cuyahoga App. Nos. 81692-81693, 2003-Ohio-3241. If the defendant is in jail on a separate unrelated case, the three-for-one provision does not apply, and the speedy trial time is counted on a one-for-one basis. See R.C. 2945.72; Coleman, supra; State v.Thieshen (1977), 55 Ohio App.2d 99."
 {¶ 14} Moreover, the triple-count provision does not apply "when the accused is being held on a parole-or probation-violation holder.State v. Brown, 64 Ohio St.3d 476, 479, 1992-Ohio-96, 597 N.E.2d 97
(parole-violation holder); State v. Martin (1978), 56 Ohio St.2d 207,211, 10 O.O3d 369, 383 N.E.2d 585 (probation-violation holder)."State v. Sanchez, 110 Ohio St.3d 274, 2006-Ohio-4478, at ¶ 7. *Page 8 
 {¶ 15} At the time of trial, Rose not only had the charges in this case pending against him, but also had pending charges filed in CR-475636, which alleged two counts of felonious assault. The court's docket shows that Rose had been indicted on January 6, 2006, but that a capias[1] issued on January 23, 2006. Rose was arraigned on the two felonious assault counts on May 4, 2006.
 {¶ 16} The record convincingly shows that Rose was being held on two separate criminal offenses at the same time; hence, the speedy trial time in this case was tolled. Rose has thus failed to establish that the outcome would have been different had counsel filed a motion to dismiss on speedy trial grounds.
 C {¶ 17} Rose next argues that counsel should have requested a jury instruction that, if the jury believed no more of the testimony than Rose merely pointed a gun at Officer Bell or Officer Howard, then that evidence was insufficient to prove "felonious assault" as to those officers and the jury should have been instructed to enter a "not guilty" finding on those counts.
 {¶ 18} A trial court should give a proposed jury instruction if it is a correct statement of the law and is applicable to the facts of the particular case. Murphy v. Carrollton Mfg. Co. *Page 9 
(1991), 61 Ohio St.3d 585, 591; State v. Young, Cuyahoga App. No. 88433,2007-Ohio-4441, at ¶ 58. A defendant may not, however, receive a jury instruction when that instruction is inconsistent with the theory of the defense. State v. King (1984), 20 Ohio App.3d 62, 64; State v.Catlin (1990), 56 Ohio App.3d 75, 79.
 {¶ 19} The instruction Rose proposed is not a complete statement of law. In State v. Brooks (1989), 44 Ohio St.3d 185, the syllabus states, "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of `felonious assault' as defined by R.C. 2903.11(A)(2)." In State v. Green (1991), 58 Ohio St.3d 239, the supreme court explained Brooks and held that "[t]he act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of `felonious assault' as defined by R.C. 2903.11(A)(2)." Id. at syllabus.
 {¶ 20} The state's evidence showed that Rose pointed the gun at Bell and pulled the trigger. Even though the gun did not fire, there were live rounds in the gun at the time, so his act of pulling the trigger showed his intention to use the gun to cause physical harm by means of a deadly weapon. Brooks, 44 Ohio St.3d at 192 (evidence that the defendant discharged or tried to discharge a firearm is "strongly *Page 10 
corroborative" of an intention to cause harm). Trial counsel had no obligation to offer the jury instruction proposed by Rose.
 D {¶ 21} Finally, Rose argues that he was denied the effective assistance of counsel because the court proceeded to trial within two weeks after defense counsel informed the court that it was not ready to proceed with trial. He maintains that two weeks was not enough time in which to prepare for trial, especially after the state identified 51 potential witnesses just two weeks prior to the start of trial.
 {¶ 22} As previously detailed, Rose had been indicted in CR-475636. On November 14, 2006, the court called that case for trial. On that date, the state informed the court that the victim of the offense was unavailable and that it would dismiss the indictment without prejudice. The court then called this case, CR-480475, for trial. Defense counsel told the court that he had just days earlier received discovery from the state and that he was not prepared for trial, thinking that the parties would proceed first on CR-475636. The state acknowledged that it listed 51 witnesses on its witness list, but that list did not include addresses or telephone numbers for many of the witnesses. The court went off the record with the parties, and then recessed until November 30, 2006, when voir dire commenced.
 {¶ 23} There is no evidence in the record to show that counsel had been unprepared for trial as of November 30, 2006. While defense counsel had earlier objected to proceeding with trial after the state dismissed the first case, two weeks *Page 11 
elapsed from that dismissal to when this case proceeded to trial. Counsel offered no objection to trial going forward, and there is nothing in the record to show that counsel was unprepared when trial commenced.
 {¶ 24} Rose's only factual argument is a reference to "crowds" that had gathered in the vicinity and that the two week interval was insufficient time for defense counsel to interview any of these people to determine whether they saw Rose attempt to fire the weapon.
 {¶ 25} There was testimony from Officer Bell who stated that there were people standing nearby, pleading with her not to shoot Rose. Although defense counsel did not offer testimony from any bystanders who might have witnessed the incident, there is no indication that counsel did not interview any of these individuals. It is possible that defense counsel did interview the bystanders and concluded that they offered nothing for the defense, particularly given the strength of the state's case regarding Rose's possession of a gun. Regardless of why defense counsel did not offer the testimony of any bystanders, Rose's argument relies on speculation and is, at best, nothing more than a challenge to counsel's trial strategy. We normally defer to decisions by trial counsel that are made in the exercise of trial strategy, particularly when those decisions involve "counsel's decision whether to call a witness[.]" State v. Treesh, 90 Ohio St.3d 460, 490, 2001-Ohio-4.
 II *Page 12 {¶ 26} For his fourth assignment of error, Rose complains that the court erred when it failed to instruct the jury that if they believed that Rose only pointed the gun at the officers, then that evidence was insufficient to prove felonious assault. We overrule this assignment based on our discussion in part I(C) of this opinion.
 III {¶ 27} In his fifth assignment of error, Rose argues that there was insufficient evidence to justify the guilty verdicts on both felonious assault counts because there was no evidence to show that he did anything other than point a gun at the officers.
 A {¶ 28} When considering the sufficiency of evidence supporting a conviction, we view the evidence in a light most favorable to the state to determine whether the state presented evidence showing all the elements of the offense. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979),443 U.S. 307, 319.
 {¶ 29} R.C. 2903.11(A)(2) prohibits any person from knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance. A firearm is a deadly weapon. See R.C.2923.11(B) (defining a "firearm" as "a deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant").
 {¶ 30} The evidence, when viewed in a light most favorable to the state, would permit a reasonable trier of fact to conclude that Rose knowingly pointed a loaded *Page 13 
gun at Officer Bell and pulled the trigger. Even though the gun misfired, the evidence showed that by pulling the trigger, Rose attempted to cause physical harm to Bell. See State v. Conn (Dec. 14, 1988), Hamilton App. No. C-880097 (defendant found guilty of felonious assault after police officers testified that he pointed a gun at them and there had been a "click" as if the trigger had been pulled, even though the gun malfunctioned and did not fire). By pointing the gun at Bell and pulling the trigger, Rose showed his intention to use the gun to cause her physical harm.
 {¶ 31} Reasonable minds could also conclude that Rose knew that Officer Howard had moved into his direct line of fire, and that by pointing the gun at Bell, he likewise had Howard in his line of sight. Howard's testimony confirmed this, as he stated that when he moved into position, he saw Rose "pointing a firearm back in the direction of myself and Officer Bell * * *." Even though Howard did not actually see Rose pull the trigger, he explained that he had been focused on Bell and providing her with cover as she attempted to reload her gun. Having pulled the trigger on this gun three different times leading up to Howard's arrival, Rose's continued pointing of the gun at Howard under circumstances when he had been repeatedly ordered to drop his gun, was sufficient to establish the elements of felonious assault.
 B {¶ 32} Rose also argues that his convictions were against the manifest weight of the evidence. In doing so, he merely restates arguments he made relating to the sufficiency of the evidence supporting felonious assault and the court's failure to *Page 14 
instruct the jury as argued in his second assignment of error. This assignment thus relies on arguments we previously rejected, so we summarily overrule it as being without merit. See State v. Brown, Cuyahoga App. No. 87932, 2007-Ohio-527, at Tf13.
 IV {¶ 33} Rose's final two assignments of error relate to tapes of 911 telephone calls. In one of the seven calls played for the jury, the caller remained on the line and narrated events as they transpired. She saw the police arrive and told the operator, "they pulled a gun on him." When the operator asked if Rose had been apprehended, the caller replied, "[h]e's crazy. He'll shoot at them. That's why we try not to get involved, but it's been ridiculous over here." Defense counsel stipulated to the admission of the tapes. Rose argues that admission of the tape violated his right to confrontation because it permitted the caller to testify about Rose's "alleged past criminal conduct." Rose also argues that the court abused its discretion by admitting the tape because the tape gave an opinion about his alleged criminal past as an excited utterance.
 A {¶ 34} Rose stated through counsel that he had no objection to the admission of the 911 tape recordings, so he is deemed to have waived all but plain error. Crim.R. 52(B) states that plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial *Page 15 
court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise. State v.Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 35} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * * ."
 {¶ 36} In Crawford v. Washington (2004), 541 U.S. 36, 53-54, the Supreme Court of the United States stated that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." The supreme court did not attempt to provide a "comprehensive definition of `testimonial.'" Id. at 68.
 {¶ 37} In Davis v. Washington (2006), 547 U.S. 813, the supreme court considered whether a tape-recording of a 911 call was testimonial when, in response to questions by the 911 operator, the caller identified her attacker during the call, but did not testify at trial. Alluding to its prior reluctance to formulate a definitive standard of what constitutes "testimonial," the supreme court stated:
 {¶ 38} "[i]t suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the course of police interrogation under *Page 16 
circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id.,126 S.Ct. 2273-2274 (footnote omitted).
 {¶ 39} The supreme court analyzed the 911 call and concluded that the questions asked by the 911 operator "objectively indicate its primary purpose was to enable police assistance to meet an ongoing emergency." Id. at 2277. The supreme court thus concluded that the 911 caller had not been acting as a "witness" and therefore her statements, tape-recorded on the 911 call, had not been "testimony."
 {¶ 40} As in Davis, the 911 calls made in this case were nontestimonial because their primary purpose was to enable police to meet an ongoing emergency. Moreover, there is nothing in the previously mentioned 911 call that would lead a reasonable juror to conclude that the statements, "he's crazy. He'll shoot at them" were a comment on Rose's criminal past. Also, the caller had narrated a sequence of events that detailed how "this boy is beating this girl up." The caller described how the woman fled, but Rose took out a gun and pointed it at the woman. These comments, viewed in context, appeared to apply to Rose's actions at the time the call was being made and not as a comment on his criminal history. *Page 17 
 B {¶ 41} Rose also argues that the statements contained on the 911 recording played to the jury were inadmissible because they did not constitute excited utterances.
 {¶ 42} Again, Rose's stipulation to the admission of the 911 tapes means that we review this assignment only for plain error. Precedent overwhelmingly supports the conclusion that 911 calls are admissible either as excited utterances[2] or present sense impressions.[3] SeeState v. Banks, Franklin App. No. 03AP-1286, 2004-Ohio-6522; State v.Jackson, Champaign App. No. 2004-CA-24, 2005-Ohio-6143; State v.Newell, Stark App. No. 2004CA00264, 2005-Ohio-2848; State v.McNeal, Allen App. No. 1-01-158, 2002-Ohio-2981. The transcript of the disputed 911 call shows that the caller narrated events as they unfolded, with no time for reflection that might call into question the trustworthiness of the call. This is a classic use of the present sense impression, hence no error, much less plain error, has been shown. The assigned errors are overruled. *Page 18 
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and MARY EILEEN KILBANE, J., CONCUR
[1] The word "capias" is a shortened form of the Latin phrase"capias ad respondendum" which "in effect command[s] the sheriff to arrest and hold the defendant to answer the plaintiffs claim unless he gave a bail bond to appear at a certain time." See Shilling v.Octavio (1964), 176 Ohio St. 123, 130.
[2] Evid.R. 803(2) defines an "excited utterance" as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
[3] Evid.R. 803(1) defines a "present sense impression" as a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." *Page 1