OPINION
{¶ 1} Defendant-appellant David Pelfrey appeals from his conviction and sentence for Tampering with Records. Pelfrey contends that his conviction is against the manifest weight of the evidence. Based upon our review of the evidence in the record, we conclude that his conviction is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 2} Nicole Lopez-Stickney, an intern for the Mobile Sources Division of the Ohio Environmental Protection Agency, was assigned to perform covert audits on employees of Enviro-Test Systems, which performs automobile emissions tests for the State of Ohio. On July 30, 2002, as part of her covert audit duties, she drove her vehicle into the E-Check station at 6785 West Third Street, in Dayton. The vehicle had been tampered with so that it would fail the E-check. She was dressed in plain clothes, and was not identified as an EPA employee.
 {¶ 3} An inspector at the E-Check station, Charles Kilbarger, performed the emissions test on the vehicle, and informed Lopez-Stickney that her vehicle had failed the E-Check. He told her, however, that he "could talk to the manager," and help her to get a waiver without paying for emissions repairs. Kilbarger told Lopez-Stickney that this had been done before for relatives and friends. He told her that he and Pelfrey "could make the Ford Ranger pass," but not that day.
 {¶ 4} Two days later, Lopez-Stickney returned, and parked her vehicle in the parking lot. This time, she was wearing a body wire. She approached Pelfrey, and told him that she was looking for Kilbarger. Kilbarger told Lopez-Stickney that they could not pass her vehicle that day, because the station manager was working. Kilbarger told her to return the following day at a different time.
 {¶ 5} The next day, Lopez-Stickney, once again wearing a body wire, returned to the station. Kilbarger told her that the test would cost $19.50 plus an additional $30 for the waiver. He told her that she needed to give him the extra $30 outside the station, because there were cameras inside the station.
 {¶ 6} The vehicle was tested, Lopez-Stickney was told that the vehicle had failed, and she paid Kilbarger $19.50 for the test.
 {¶ 7} After this, Pelfrey asked Lopez-Stickney for mileage information. Pelfrey entered this information into the office computer, and Lopez-Stickney saw the computer screen display "WAIVER." Pelfrey did not ask Lopez-Stickney for repair receipts, and did not ask her whether she had emissions repairs performed on the vehicle. Pelfrey told Lopez-Stickney that the waiver was issued to her because the vehicle could not pass the E-check, and she had paid for emissions repairs totaling $300. Lopez-Stickney asked Pelfrey if she should give him "the money." Pelfrey told her that Kilbarger would collect the money from her.
 {¶ 8} Kilbarger escorted Lopez-Stickney out of the station. Once outside, Lopez-Stickney gave Kilbarger a ten-dollar bill and a twenty-dollar bill, both of which had previously been photo-copied. Kilbarger took the cash, folded it, and placed it in his smock pocket with his right hand Lopez-Stickney then left the station.
 {¶ 9} Kilbarger testified that Pelfrey then asked him for the thirty dollars, and Kilbarger gave Pelfrey the money.
 {¶ 10} Shortly thereafter, a detective and two state troopers secured the station. The three employees working at the station were immediately handcuffed and escorted into the manager's office. The investigating detective searched Kilbarger's smock, and found that the thirty dollars was missing. As he was being questioned later, Pelfrey told the detective that the thirty dollars was in his left rear pocket. This money was retrieved, and the serial numbers on the bills matched the photocopies.
 {¶ 11} Pelfrey was arrested and charged by indictment with Tampering with Records, in violation of R.C. 2913.42(A)(1). Following a jury trial, Pelfrey was found guilty as charged, a judgment of conviction was entered, and Pelfrey was sentenced to four years imprisonment.
 {¶ 12} From his conviction and sentence, Pelfrey appeals.
 II {¶ 13} Pelfrey's sole assignment of error is as follows:
 {¶ 14} "The verdict of the jury was against the manifest weight of the evidence."
 {¶ 15} In conducting a manifest weight analysis, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541.
 {¶ 16} The offense of which Pelfrey was convicted is prescribed by R.C. 2913.42, as follows:
 {¶ 17} "(A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 18} "(1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data or record;
 {¶ 19} "(2) Utter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section."
 {¶ 20} Pelfrey initially argues that the State failed to prove that he was without a privilege to issue the waiver to Lopez-Stickney.
 {¶ 21} The State presented the testimony of Matthew Lindsay, an employee of the Ohio EPA. Lindsay testified that in order for the computer to generate a waiver based on emissions repairs totaling at least $300, the station manager must enter his inspection number, his personalized identification number (or PIN), and the dollar value of the emissions-related repairs. Lindsay further testified that managers should review receipts before processing a waiver.
 {¶ 22} Based on Lindsay's testimony, the jury could reasonably conclude that for Pelfrey to have caused the computer to generate a waiver, he would have had to have inputted into the computer a dollar value for emissions-related repairs in excess of three hundred dollars. Based upon Lopez-Stickney's testimony, the jury could reasonably conclude that Pelfrey had no basis for believing that Lopez-Stickney's vehicle had had emissions repairs totaling at least three hundred dollars. Entering an amount for emissions repairs in the computer without having any basis for believing that information to be true constitutes a falsification of data. Neither Pelfrey nor anyone else testified that Pelfrey had a privilege to falsify data.
 {¶ 23} Pelfrey next argues that the State failed to prove that he inputted any data into the computer that was not given to him by Lopez-Stickney and Kilbarger. However, the testimony of Lopez-Stickney and Kilbarger, and reasonable inferences to be derived therefrom, would permit a reasonable jury to conclude that Pelfrey was not told by either Kilbarger or Lopez-Stickney that emissions repairs had been performed on the vehicle totaling at least three hundred dollars, even if it would have been reasonable for Pelfrey to have relied upon that information.
 {¶ 24} Pelfrey next contends that the State's evidence is insufficient to prove the existence of a scheme between Kilbarger and Pelfrey. Kilbarger testified that Pelfrey told him to ask Lopez-Stickney for thirty dollars, an amount of money that does not correspond to any authorized charges. Kilbarger collected this money from Lopez-Stickney, and delivered it to Pelfrey. This is corroborated by the fact that the actual ten- and twenty-dollar bills Lopez-Stickney gave to Kilbarger were found on Pelfrey's person. Pelfrey sought to explain this by testifying that Kilbarger had paid him the thirty dollars as part of the purchase price for some tire rims that Pelfrey had earlier sold to Kilbarger. Kilbarger disputed this, contending that he had sold tire rims to Pelfrey, not the other way around. In our view, the jury was entitled to believe Kilbarger, and disbelieve Pelfrey, in this regard.
 {¶ 25} Finally, Pelfrey contends that the State failed to prove that the record allegedly falsified was a government record, which is required to make the offense a felony of the third degree. Pelfrey is referring to R.C. 2913.42(B)(4), which provides, in pertinent part, as follows:
 {¶ 26} "If the writing, data, computer software, or record is kept by or belongs to a local, state, or federal governmental entity, [the offense is] a felony of the third degree." Lindsay testified that although the E-Check test results are stored in computers owned by Enviro-Tests Systems, the data itself belongs to the State. This unrebutted testimony permits a finding that the data Pelfrey falsified belonged to the State of Ohio, thereby making the offense a felony of the third degree.
 {¶ 27} Pelfrey's sole assignment of error is overruled.
 III {¶ 28} Pelfrey's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Brogan and Young, JJ., concur.