[Cite as *State v. Melton*, 2013-Ohio-257.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97675

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARTEZ MELTON

DEFENDANT-APPELLANT

### JUDGMENT:
### AFFIRMED IN PART; REVERSED IN PART
### AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-549424

**BEFORE:** Jones, P.J., Rocco, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** January 31, 2013

**ATTORNEY FOR APPELLANT**

Jana DeLoach
P.O. Box 2385
Akron, Ohio 44309


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Edward Fadel
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ON RECONSIDERATION[1]

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant, Martez Melton, appeals his felonious assault and discharge of a firearm on or near prohibited premises convictions, which were rendered after a jury trial. He also appeals his 29-year prison sentence. We affirm in part, reverse in part, and remand for further proceedings.

I. Procedural History

{¶2} In April 2011, Melton was bound over from the juvenile justice system to the adult justice system and indicted on several charges. In Counts 1 and 2, Melton was charged with felonious assault upon Lawrence Hanson. In Counts 3 and 4, Melton was charged with felonious assault upon Dave Whitted. Count 5 charged Melton with discharge of a firearm on or near prohibited premises. The five counts all contained one- and three-year firearm specifications.[2]

{¶3} After its deliberations, the jury found Melton guilty of all counts and specifications. Sentencing was deferred for the completion of a presentence investigation report. The trial court sentenced Melton to a 29-year prison term, which

---

[1] The original announcement of decision, *State v. Melton*, 8th Dist. No. 97675, 2012-Ohio-5413, released November 21, 2012, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

[2] Count 6, having weapons under disability, was dismissed prior to trial.

consisted of maximum, consecutive sentences.

## II. Facts

{¶4} The following facts were elicited at trial. The victims, Hanson and Whitted, were friends. They knew Melton, but there was animosity between them. All three were frequent customers of Eddie's Discount Store located on Noble Road in Cleveland Heights.

{¶5} On the evening of the incident, Hanson had been at Eddie's, made a purchase, and left the store. Hanson testified that as he was returning to his car he saw Melton and two other males sitting on his car, so he started to walk back to the store. Melton then started approaching Hanson, so Hanson ran back into the store and locked the door. Hanson testified that Melton was yelling at him to "come outside and get beat up." Concerned, Hanson called Whitted and asked him to come to the store to help him.

{¶6} The store's owner, Joseph Dahler, testified that when Hanson ran back into the store he appeared "terrified." Dahler testified that Melton and another male were outside the store yelling at Hanson. A surveillance video from the store, which was admitted into evidence, shows Melton pacing in front of the store. Dahler talked to Melton through the glass door, asking him to leave and not "hang out" in front of the store. Melton did not leave, however.

{¶7} Meanwhile, Whitted arrived at the scene. Both Hanson and Dahler testified that they saw Whitted start fighting with Melton and Melton fighting back. Hanson ran outside and joined the fight, which then involved four people: Melton, Melton's associate,

Hanson, and Whitted.

{¶8} According to Hanson, Melton disengaged himself from the fighting, ran out into the middle of Noble Road, pulled a gun from his waist, and shot both Hanson and Whitted. Hanson suffered a gunshot wound to his left calf; Whitted suffered a gunshot wound to his right bicep. Both Whitted and Hanson testified that they heard Melton's associate tell Melton to get his "hammer," which is slang for gun.

{¶9} Dahler testified that at the time of the shooting he was at the front of his store, preparing to close it for the evening, when he heard a "pop," looked out of the window, and saw Melton with a gun.

{¶10} Hanson and Whitted left the scene by car to go to the hospital. Shortly thereafter, the police stopped the car. No firearm was recovered from the vehicle or any of its occupants.

{¶11} Melton testified to a different occurrence. According to Melton, he was going to Eddie's when he saw Hanson and Hanson spoke profanely to him. Melton tried to "work it out" with Hanson, but Hanson was not interested. Melton told Hanson to "watch his mouth," and Hanson then "back pedaled" into the store.

{¶12} As Hanson was "back pedaling" into the store, Melton was still trying to talk to him. Melton testified that he pursued Hanson and waited after Hanson went into the store because normally Hanson was with Whitted, and he saw this as an opportunity to talk to Hanson alone and "settle the score."

{¶13} After Whitted came on to the scene, started assaulting Melton, and Hanson

joined the fray, Melton tried to get the "upper hand" so that he could defend himself. Melton testified that it was "hard to explain" how everyone was positioned, but he saw Whitted reach for something and pull out something silver, which he immediately knew was a gun. As the fight was still going on, Melton grabbed Whitted's arm for the gun, and it went off. Melton then ran.

{¶14} Melton denied ever having a gun; he testified that he only grabbed for the gun Whitted had. Melton also testified that Whitted pulled the trigger.

{¶15} Melton now raises the following assignments of error for our review:

[I.] The trial court erred in sentencing the appellant to a felony of the first degree for R.C. 2923.162(A)(3), discharge of firearm on or near prohibited premises, because the verdict form failed to mention the degree of the offense or an aggravated element of the offense as required by R.C. 2945.75; therefore, the appellant should have been sentenced to the lowest form of the offense, which is a fourth degree misdemeanor.

[II.] The trial court erred in not instructing the jury on the lesser included offense of aggravated assault.

[III.] The trial court erred in sentencing the appellant to consecutive sentences for the offenses of discharge of firearm on or near prohibited area, and two counts of felonious assault because said offenses are allied offenses of similar import.

[IV.] The trial court committed judicial misconduct when it failed to respect and comply with the law at all times in a manner [that] promotes public confidence in the integrity and impartiality of the judiciary.

[V.] The appellant was denied the right to effective assistance of trial counsel as guaranteed by the Sixth Amendment of the United States Constitution.

III.   Law and Analysis

Verdict Form

{¶16} For his first assigned error, Melton contends that the trial court improperly sentenced him on discharge of a firearm on or near prohibited premises as a first degree felony. Melton contends that because the verdict form did not state the degree of the offense or an aggravating element of the offense, he should have been sentenced to the lowest degree of the offense, which is a fourth degree misdemeanor.

{¶17} Melton did not object to the verdict form at the trial court level and, thus, we review for plain error. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶18} Melton relies on R.C. 2945.74 in support of his contention. The statute provides in part as follows:

(A) When the presence of one or more additional elements makes an offense one of more serious degree:

(1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.

(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are

present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶19} Discharge of a firearm on or near prohibited premises is governed by R.C. 2923.162, and provides in part as follows: "(A) No person shall * * * (3) Discharge a firearm upon or over a public road or highway."

{¶20} Subsection C of the statute provides the degrees of the offense, with the least severe being a misdemeanor of the fourth degree and the most severe being a felony of the first degree. R.C. 2923.162(C). A violation of subsection (A)(3) that "caused serious physical harm to any person" is a first degree felony. R.C. 2923.162(C)(4).

{¶21} Melton was indicted under R.C. 2923.162(A)(3), for discharging a firearm upon or over a public road. The indictment charged that Melton "did discharge a firearm upon or over a public road or highway and the violation caused serious physical harm to a person Lawrence Hanson and/or Dave Whitted." The verdict form for the charge read as follows:

> We, the Jury in this case being duly impaneled and sworn, do find the Defendant, Martez Melton, Guilty of Discharge of Firearm On or Near Prohibited Premises, in violation of §2923.162(A)(3), of the Ohio Revised Code, as charged in Count Five of the Indictment.

{¶22} Thus, although the indictment did not state any degree for the offense, it did allege the additional element of the violation causing serious physical harm to Hanson and/or Whitted, and therefore, charged Melton with a felony of the first degree under subsection (C)(4) of R.C. 2923.162. But the verdict form stated neither a degree for the offense nor the additional element of the violation causing serious physical harm to a

person, which elevates the crime to a first degree felony.

**{¶23}** The Third Appellate District addressed this issue in a factually similar case. In *State v. Manley*, 3d Dist. No. 1-11-04, 2011-Ohio-5082, the defendant was indicted, among other crimes, on discharge of a firearm on or near prohibited premises. The indictment charged a felony of the third degree under R.C. 2923.162(A)(3) and (C)(2)[3] because the defendant fired a gun across an intersection, and struck and damaged a nearby home that was occupied at the time. The verdict form, however, did not state the degree of the offense or the additional element that the crime "created a substantial risk of physical harm to any person or caused physical harm to property" under R.C. 2923.162(C)(2). The defendant did not raise the issue at either the trial court or appellate levels; the Third District sua sponte reviewed the issue and found plain error. *Id.* at ¶ 24. In so finding, the court relied on the Ohio Supreme Court's decision in *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735.

**{¶24}** In *Pelfrey*, the defendant was charged with tampering with records, in violation of R.C. 2913.42. Under the statute, the offense is elevated to a third degree felony if the offender's tampering involves government records, which was the case in *Pelfrey*. The defendant's conviction was upheld on a manifest weight of the evidence appeal to the Second District Court of Appeals. *State v. Pelfrey*, 2d Dist. No. 19955, 2004-Ohio-3401.

---

[3]R.C. 2923.162(C)(2) provides that a violation of the statute is a third degree felony if the violation "created a substantial risk of physical harm to any person or caused serious physical harm to property."

**{¶25}** Upon the reopening of his appeal, the defendant argued that the trial court erred in entering a conviction of a third degree felony because the verdict form did not state the degree of the offense or the additional elements that elevated the offense. The Second District agreed with the defendant and ordered the trial court to enter a conviction and sentence for first degree misdemeanor tampering with records, the least degree of the offense. *State v. Pelfrey*, 2d Dist. No. 19955, 2005-Ohio-5006.

**{¶26}** The Ohio Supreme Court upheld the Second District's decision. The court noted that R.C. 2945.75 is "clear on its face" and "certainly imposes no unreasonable burden on lawyers or trial judges." *Pelfrey*, 112 Ohio St.3d 422 at ¶ 11, 12. The court held:

> Because the language of R.C. 2945.75(A)(2) is clear, this court will not excuse the failure to comply with the statute or uphold Pelfrey's conviction based on additional circumstances such as those present in this case. The express requirement of the statute cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment, or by presenting evidence to show the presence of the aggravated element at trial or the incorporation of the indictment into the verdict form, or by showing that the defendant failed to raise the issue of the inadequacy of the verdict form. We hold that pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense.

*Id.* at ¶ 14.

**{¶27}** Thus, under *Pelfrey*, Melton should have been sentenced to the lowest degree of the offense of discharge of a firearm on or near prohibited premises. The state, however, cites to the Ohio Supreme Court's recent decision on this issue

post-*Pelfrey*, which reaches a different result. In *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, on the state's appeal from this court, the Ohio Supreme Court examined the issue in relation to a drug possession charge. The defendant was indicted on possession of "cocaine or a compound, mixture, preparation, or substance containing cocaine in an amount of less than 5 grams," which is a violation of R.C. 2925.11(A) and a felony of the fifth degree. *Id.* at ¶ 4. The jury was instructed on the charge as follows:

> The defendant * * * is charged in Count 2 of the indictment with possession of drugs, in violation of Ohio Revised Code Section 2925.11. Before you can find the defendant guilty, you must find beyond a reasonable doubt that * * * the defendant did knowingly obtain, possess or use a controlled substance, and the drug involved was cocaine or a compound, mixture, preparation or substance containing cocaine in an amount less than five grams.

*Id.* at ¶ 5.

**{¶28}** Further, the verdict form read as follows: "'We, the jury in this case being duly impaneled and sworn, do find the Defendant * * * guilty of Possession of Drugs in violation of §2925.11(A) of the Ohio Revised Code, as charged in Count Two of the indictment.'" *Id.* at ¶ 6.

**{¶29}** This court, relying on *Pelfrey*, vacated the sentence and remanded for resentencing, finding that because the jury verdict form did not indicate either the degree of the offense or the aggravating circumstance, the defendant was only convicted of a misdemeanor. *State v. Eafford*, 8th Dist. No. 94718, 2011-Ohio-927.

**{¶30}** The Ohio Supreme Court reversed this court, holding that because the

indictment charged the defendant with "possession of cocaine," and the verdict form "reflected a finding of guilty *as charged in Count Two of the indictment*, referring to possession of cocaine," he could not demonstrate that but for the use of the verdict form the outcome of the trial would have been different. (Emphasis sic.) *State v. Eafford*, 132 Ohio St.3d 159 at ¶ 19. (*But see* Lanzinger, J., dissenting, stating that *Pelfrey* held that the "'clear language of R.C. 2945.75 [required] a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravated element has been found to justify convicting a defendant of a greater degree of a criminal offense.'" *Eafford* at ¶ 22, quoting *Pelfrey* at syllabus.)[4]

{¶31} *Eafford* and *Pelfrey* represent reconcilable applications of the plain error doctrine. The charge in *Eafford*, possession of cocaine, did not involve any additional elements that elevated the level of the offense. The verdict form described the offense as "possession of drugs," but the only drug involved was cocaine. Therefore, possession of cocaine was necessarily what the jury found the defendant guilty of.

{¶32} Here, the crime of discharge of a firearm on prohibited premises *which causes serious physical harm to any person* does include an element that increases the offense. Therefore, this case is more analogous to *Pelfrey* than to *Eafford*. As in *Pelfrey*, neither the aggravating element here (i.e., serious physical harm) nor the degree

---

[4] *See also State v. Berger*, 8th Dist. No. 71618, 1998 Ohio App. LEXIS 596 (Feb. 19, 1998), O'Donnell, J., dissenting: "since the legislature requires the verdict form to state either the degree of the offense or that additional elements are present, regardless of whether the evidence is obvious, apparent or undisputed, trial courts must comply with these directives and properly prepare verdict forms to enable juries to discharge their duties according to law."

of the offense was mentioned in the verdict form. Consequently, under R.C. 2945.75, Melton should have been sentenced to the lowest degree of the offense of discharge of a firearm on prohibited premises.

{¶33} In light of the above, the first assignment of error is sustained.

Failure to Instruct on Aggravated Assault

{¶34} In his second assignment of error, Melton contends that the trial court erred by not instructing the jury on aggravated assault, an offense of an inferior degree of felonious assault.

{¶35} "A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." *State v. Williford*, 49 Ohio St.3d 247, 251, 551 N.E.2d 1279 (1990). Jury instructions should be tailored to fit the facts of the case. *Avon Lake v. Anderson*, 10 Ohio App.3d 297, 299, 462 N.E.2d 188 (9th Dist.1980).

> [A] jury instruction must be given on a lesser included (or inferior-degree) offense when sufficient evidence is presented which would allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included offense.

*State v. Shane*, 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272 (1992).

{¶36} The defense, however, did not request an instruction on aggravated assault and, therefore, under Crim.R. 52(B), we review for plain error. *State v. Franklin*, 62 Ohio St.3d 118, 128, 580 N.E.2d 1 (1991). An incorrect jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long*, 53 Ohio St.2d 91, paragraph two of the syllabus.

**{¶37}** R.C. 2903.12 governs aggravated assault and provides as follows:

(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

* * *

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.

**{¶38}** A review of this court's decisions on instructing on aggravated assault as an inferior charge of felonious assault demonstrates that there was no plain error here. For example, in *State v. Allen*, 8th Dist. No. 76672, 2003-Ohio-24, the defendant, who was convicted of felonious assault on her brother, contended that the jury should have been instructed on aggravated assault. The defendant testified at trial that she went to her mother's apartment, where her brother was, and her brother immediately began to argue with her upon her arrival. Her brother accused her of slamming a door in his face and "came toward" her, so he grabbed a magnifying glass. *Id.* at ¶ 52. Someone else in the apartment then called the police.

**{¶39}** The defendant waited for the police for approximately 40 minutes, but in the meantime had summoned her daughter to the apartment. The defendant's mother asked the mother and daughter to leave. They agreed, and as they were leaving the brother threatened the defendant. The daughter jumped in between the defendant and her brother and the defendant then ran to her car to get a stick. The defendant testified that

her brother pushed her daughter away and then pulled his hand back as if he were going to hit her, so she struck him.

{¶40} This court held that the defendant's "own version of the facts may not have been sufficient to establish either provocation 'to arouse the passions of an ordinary person beyond the power of his or her control' or that she herself was 'actually * * * under the influence of sudden passion or in a sudden fit of rage.'" *Id.* at ¶ 54.

{¶41} In another case, *State v. Blair*, 8th Dist. No. 76511, 2000 Ohio App. LEXIS 3046 (July 6, 2000), the defendant was also convicted of felonious assault after a fight with his neighbor. The defendant and his neighbor were drinking on the defendant's front porch. The two got into an argument, which led to a fist fight in the front yard. Two witnesses saw the altercation.

{¶42} Both witnesses testified that the defendant ran into his home and immediately returned with a baseball bat. The defendant told his neighbor to leave, and the neighbor began walking away and said, "I'm leaving, leave me alone." According to the witnesses, the defendant then began beating the neighbor with the bat. When arrested, the defendant claimed that the neighbor came at him with a knife.

{¶43} On appeal, this court found that there was no factual basis to demonstrate serious provocation for an aggravated assault instruction. This court noted among other things, that the defendant had the opportunity to retreat.

{¶44} In a final case on this issue, *State v. Thomas*, 8th Dist. No. 56293, 1989 Ohio App. LEXIS 4988 (Dec. 7, 1989), this court also found that an aggravated assault

instruction was not warranted where the defendant committed a felonious assault on his girlfriend. The defendant and his girlfriend got into an argument, which escalated to the defendant hitting the girlfriend in her face. The victim ran away and threw a pop bottle toward either the defendant or his car. The girlfriend continued to run to a neighbor's house, but the defendant caught up to her and beat her on the head with his fist and a brick. Two witnesses, who lived in the house where the victim ran to, corroborated her version of the incident.

{¶45} According to the defendant, however, the victim provoked him by slashing his clothes with a knife, throwing the pop bottle at his car, and drawing a knife on him. The defendant claimed that when the two were on the neighbor's property, he wrestled the knife from the victim and then picked up a brick. But he decided not to use the brick, threw it back down, and only hit the victim with his fist.

{¶46} This court found that the defendant did not present sufficient evidence of provocation. This court noted that despite the fact that the victim and the defendant had a "quarrelsome relationship," and the victim threw a pop bottle at the defendant or his car, the victim had removed herself from the situation, but the defendant followed her. This court specifically stated:

> Neither the quarrelsome relationship, nor the victim's minor attempts to strike back were reasonably sufficient, as a matter of law, to incite or arouse defendant into repeatedly beating the victim in the head with his fist and a brick. This is especially so given the period of time between the initial confrontation and the beating, and the fact that defendant pursued the victim across the street.

*Id.* at *8 -*9.

{¶47} Here, Melton and the victims had a troubled relationship. By all accounts, including Melton's, Hanson had retreated into the store after he encountered Melton. Melton had the opportunity to leave the scene, and even after being requested to do so by the store's owner, did not. Rather, Hanson testified that Melton told him to "come outside and get beat up." Dahler, the store's owner, testified that Hanson appeared "terrified." And despite Melton's contention that all he wanted to do was talk to and "settle the score" with Hanson, Dahler testified that Melton and his associate were yelling at Hanson. This evidence did not support a finding of "serious provocation occasioned by the victim" to warrant an aggravated assault instruction.

{¶48} Moreover, the defense's theory of the case was that Melton did *not* possess or fire the gun. Rather, the defense contended that Whitted had the weapon and Melton was merely trying to get it from him, when Whitted fired it.

{¶49} In light of the above, there was no plain error by the trial court's failure to instruct on aggravated assault and the second assignment of error is overruled.

## Allied Offenses

{¶50} For his third assigned error, Melton contends that the trial court erred in sentencing him to consecutive terms for the discharge of firearm on or near prohibited premises and the felonious assaults because they are allied offenses of similar import.

{¶51} The law in Ohio on allied offenses has journeyed down a winding path. In the Ohio Supreme Court's most recent decision regarding allied offenses, the court stated that "[i]t is time to return our focus to the plain language and purposes of the merger

statute." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 41. That statute, R.C. 2941.25, provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶52} The court noted that the statute "itself instructs us to look at the defendant's conduct when evaluating whether his offenses are allied." *Id.* at ¶ 42. First, courts must determine "whether it is possible to commit one offense *and* commit the other with the same conduct * * *." (Emphasis sic. Citation omitted.) *Id.* at ¶ 48. Second, "[i]f multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50, (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Johnson* at ¶ 50.

**{¶53}** Moreover, the Ohio Supreme Court has found that the failure to merge allied offenses of similar import constitutes plain error and a sentence that contains an allied offense error is contrary to law. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 26, 31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845; R.C. 2953.08(A)(4).

**{¶54}** Here, under the first prong of the *Johnson* inquiry, it is possible to commit felonious assault by means of a deadly weapon and discharge of a firearm on or near prohibited premises. We therefore consider the second prong of the *Johnson* inquiry, whether the offenses were committed by the same conduct. We find they were. The evidence here demonstrates that when all the parties (Melton, Melton's associate, Hanson, and Whitted) were together, they were fighting and a shooting took place. The fight and shooting were one continuous act, and the assaults and discharge of the firearm on or near prohibited premises were committed by the same conduct. As such, they were allied offenses and should have merged. Under these circumstances, "the state must elect which of [the] two * * * charges will merge into the other for purposes of * * * conviction and sentence." *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 43.

**{¶55}** In light of the above, the third assignment of error is sustained.

Judicial Bias

**{¶56}** In his fourth assignment of error, Melton contends that the trial court's comments demonstrated its bias against him and deprived him of a fair proceeding.

**{¶57}** The comments Melton complains of were made by the trial judge at sentencing and were as follows:

> I don't think he's [Melton] a good person, I think he's probably one of the worst examples of a young man that is produced in our community. I think that he is everything that society abhors in terms of a young person. He's gun-toting, he has no regard for the law, he has a previous conviction in juvenile court for felonious assault. He doesn't learn from his mistakes. He thinks he's clever. He thinks he's wise. He's insistent on criminal activity.

> I think that he is the worst form of a young person. He is the young person in society that everyone has nightmares about, that you can't go to a store without him convening outside with his friends and pulling that on you. That's crazy. Who does something like that? And then shooting two people and coming in here, telling that type of lie that the gun accidentally went off. Happened to have gone off and shot the two people that he was in an altercation with. Just more than, you know, the jury didn't believe it, I didn't believe it either. He is totally without guidance.

> * * * I mean he has no regard for anybody. And it's all about him in the streets and him ruling.

**{¶58}** The trial court then allowed Melton's mother to speak. The mother told the court that Melton was not an "animal," a "monster," a "threat to society" or a "gun-totter," and that he was "coerced" into the crime. The court told the mother that Melton was convicted in juvenile court at age 12 of possessing a weapon in a public place; the mother denied he had a weapon. The trial court stated that that was the information before the court and that Melton "has been a bad kid." Melton responded: "Your Honor, I have made some mistakes in life. I'm still in school, I was getting back on track." The court responded:

> You know what, Mr. Melton, I would shutter to think if somebody in my family would be in school with you. It would scare the bejesus out of me

to have someone in my family sit in a classroom with a human being like you. Nothing could be more frightening to me than to be in a classroom with a person like you. That would be a nightmare for me that you would be in the same classroom with someone in my family. Oh, my God, that would be awful. That would be awful.

The following exchange then took place:

THE DEFENDANT: Your Honor, I love that school, all my teachers love me. My peers like - -

THE COURT: I don't believe that.

THE DEFENDANT: I attend school on a regular basis. This would have been my last year in high school.

THE COURT: I don't believe that.

THE DEFENDANT: This would have been my last year.

THE COURT: Most people are good, and you are rotten to the core.

{¶59} Defense counsel requested that in sentencing Melton, the court consider his age, 18, and the goal of rehabilitation. The court responded:

I am trying my best to look at this, think to myself, what could have happened with this kid to rehabilitate him. He is not — he is like from a different planet. He has no soul. He has no conscience whatsoever. He's unrelenting. He just doesn't stop. He is a menace to society. He is a nightmare.

{¶60} A trial judge is not precluded from making comments during the course of a proceeding,[5] and especially at sentencing, where it has to make certain findings and consider various factors. Nonetheless, Canon 3 of the Code of Judicial Conduct states that a judge "shall perform the duties of judicial office impartially and diligently."

---

[5] *See State v. Thomas*, 36 Ohio St.2d 68, 71, 303 N.E.2d 882 (1973).

"Bias" or "prejudice," when used in reference to a judge, "implies a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part the judge, as contradistinguished from an open state of mind which will be governed by the law and facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶61} Melton contends that because the comments demonstrated the trial court's bias and prejudice against him, his entire sentence should be vacated, and upon remand, the case should be reassigned. Our resolution of Melton's other assignments of error already require resentencing, so this assignment of error is moot to the extent Melton asks for his sentence to be vacated. Under Ohio Constitution, Article IV, Section5(C), the Ohio Supreme Court has the sole authority to disqualify a common pleas court judge. *See also* R.C. 2701.03; *State v. Bacon*, 8th Dist. No. 85475, 2005-Ohio-6238, ¶ 66. This case will be remanded for resentencing and Melton, therefore, may raise the issue of judicial bias at that time. *See State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 32.

{¶62} In light of the above, the fourth assignment of error is overruled.

Ineffective Assistance of Counsel

{¶63} For his final assignment of error, Melton contends that he was denied the effective assistance of trial counsel.

{¶64} We review a claim of ineffective assistance of counsel under the two-part

test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on an ineffective assistance of counsel claim, an appellant must demonstrate that his counsel's performance fell below an objective standard of reasonable representation; and if so, show there was a reasonable probability that his counsel's errors affected the outcome of the proceedings. *Id.* Further, judicial scrutiny of a lawyer's performance must be highly deferential. *State v. Sallie*, 81 Ohio St.3d 673, 674, 1998-Ohio-343, 693 N.E.2d 267. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland* at 2065. Debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810.

**{¶65}** Melton bases his claim of ineffective assistance of counsel claim on trial counsel's failure to: (1) object at sentencing to discharge of a firearm on or near prohibited premises being a first degree felony; (2) request an aggravated assault jury instruction; and (3) raise the issue of felonious assault and discharge of a firearm on or near prohibited premises being allied offenses.

**{¶66}** We find merit to Melton's first and third contentions. As was discussed above, the verdict form was insufficient to sustain a first degree felony conviction for discharge of a firearm on or near prohibited premises. Further, the evidence demonstrated that Melton acted with a single animus in this incident and, therefore, the

discharge of a firearm on or near prohibited premises and the felonious assault convictions should have merged. However, in light of our resolution of his earlier assignments of error, Melton has not been prejudiced by any ineffective assistance.

{¶67} In light of the above, the fifth assignment of error is overruled.

Conclusion

{¶68} The judgment in this case is affirmed in part and reversed in part. Melton should have been convicted of a fourth degree misdemeanor for discharge of a weapon on or near prohibited premises. On remand, the conviction judgment should be corrected to reflect that degree of the offense.

{¶69} Melton's sentence is vacated. The convictions for discharge of a weapon on or near prohibited premises and felonious assault should have merged. On remand, the state shall elect which charges merge into the other for sentencing.

{¶70} Judgment affirmed in part and reversed in part. Case remanded for resentencing.

It is ordered that appellant recover from appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

KENNETH A. ROCCO, J., and
MARY EILEEN KILBANE, J., CONCUR