[Cite as *State v. Kilbane*, 2014-Ohio-1228.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99485

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TERRENCE KILBANE

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-11-551599-A

**BEFORE:** Boyle, A.J., E.T. Gallagher, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 27, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY: John T. Martin
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Melissa Riley
        James M. Price
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, A.J.:

{¶1} Defendant-appellant, Terrence Kilbane ("Kilbane"), appeals his driving under the influence of alcohol ("DUI") conviction. Finding no merit to the appeal, we affirm.

Procedural History and Facts

{¶2} Kilbane was charged with two counts of DUI. Count 1 alleged that Kilbane operated a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a). Count 2 alleged that Kilbane, while having a blood alcohol content in excess of the legal limit, operated a vehicle in violation of R.C. 4511.19(A)(1)(d). Both counts carried furthermore specifications alleging that Kilbane had previously been convicted of a felony DUI. The furthermore specifications elevated the DUI charges to third-degree felonies.

{¶3} Officer Matthew Rancourt ("Rancourt") of the Rocky River Police Department testified at trial that when he stopped Kilbane for failure to stop at a stop sign, he noticed that his speech was slurred, his eyes were glassy, and his breath smelled of alcohol. At Rancourt's request, Kilbane removed a jacket from the front passenger seat and uncovered eight beer bottles. One of the bottles of beer spilled onto the front passenger seat.

{¶4} Officers Kimberly Forkins ("Forkins") and Nicholas Rusinko ("Rusinko"), who responded to Rancourt's call for backup, testified that they were present when Rancourt administered three field-sobriety tests. According to these witnesses, Kilbane failed all three field sobriety tests, and Rancourt arrested Kilbane for DUI. Rusinko

conducted an inventory search of Kilbane's car and discovered empty and partially filled containers of alcohol in the trunk and backseat of the vehicle.

{¶5} At 6:20 p.m., after Kilbane was booked in the Rocky River jail, Officer Forkins used a BAC Datamaster ("Datamaster" or "breathalyzer") to test Kilbane's blood alcohol content. The results indicated that Kilbane's blood alcohol content was 0.15. During questioning, Kilbane informed Forkins that he had no physical defects or illnesses, did not take any medication, and had eight hours of sleep the night before the stop.

{¶6} Forkins testified that the Datamaster must be checked once every seven days to ensure that it is working properly. An officer other than Forkins performed the routine checks and documented them using a standard checklist. The Datamaster itself also prints a report of the same information. Without objection, Forkins testified to the contents of these records, which indicated that the Datamaster had been checked and found to be in proper order two days before Kilbane's arrest.

{¶7} The jury returned guilty verdicts on both counts charged in the indictment. The jury also made a "further finding" on each verdict form that Kilbane had previously been convicted of DUI in Cuyahoga County Common Pleas Court. The court sentenced Kilbane to 90 days in prison, imposed a $1,350 fine, ordered mandatory alcohol and drug addiction treatment programs, and suspended his license for three years. On motion, the court later amended the prison term to 60 days in jail. Kilbane now appeals, raising the following four assignments of error:

I.   The convictions for count one and two are for misdemeanors and not for third degree felonies because the verdict forms do not indicate that the defendant was previously convicted of a felony violation of R.C. 4511.19.

II.   The evidence was insufficient to sustain a conviction in count one because the evidence failed to prove beyond a reasonable doubt that Mr. Kilbane's driving was impaired by the consumption of alcohol.

III.   The trial court plainly erred in allowing the testimony from a police officer about the documents relating to the calibration of the breathalyzer by another police officer.

IV.   As to count two, Mr. Kilbane received the ineffective assistance of counsel.

## Third-Degree Felony

{¶8} In the first assignment of error, Kilbane argues he should have been convicted of misdemeanors instead of third-degree felonies because the verdict forms did not indicate that he had previously been convicted of felony DUI.  He  concedes the verdict forms refer to a prior DUI conviction but contends that because they fail to identify the prior conviction as a felony, they fail to comply with the enhanced penalty requirements of R.C. 2945.75 for certain offenses.

{¶9} R.C. 4511.19(G) provides enhanced penalties for repeat DUI offenders. Generally, a defendant found guilty of violating R.C. 4511.19(A)(1)(a) or 4511.19(A)(1)(d) is guilty of a first-degree misdemeanor.   However, R.C. 4511.19(G)(1)(d) escalates the offense to a fourth-degree felony if the offender has previously been convicted of a certain number of DUIs within a certain "look back

period." If the offender has previously been convicted of a felony DUI, a subsequent DUI conviction is a third-degree felony, "regardless of when the violation and the conviction or guilty plea occurred." R.C. 4511.19(G)(1)(e).

{¶10} Where the penalty for a particular crime is enhanced by virtue of a prior conviction of the same offense, the prior offense is an essential element of the subsequent offense and must be proved by the state. *State v. Allen*, 29 Ohio St.3d 53, 54, 506 N.E.2d 199 (1987). Since a prior conviction is an essential element of the subsequent offense, as opposed to a sentencing enhancement, R.C. 2945.75(A) requires that the factfinder make a separate finding of the offense- aggravating element. R.C. 2945.75(A) provides in relevant part:

> When the presence of one or more additional elements makes an offense one of more serious degree:
>
> * * *
>
> (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶11} In *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, the Ohio Supreme Court held:

> Pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense.

*Id.* at syllabus.

**{¶12}** In *Pelfrey*, the defendant was charged with tampering with records. The offense would have constituted a misdemeanor under R.C. 2913.42(B)(2)(a), except that the records at issue were governmental records, "a circumstance that elevate[d] the crime to a third-degree felony under R.C. 2913.42(B)(4)." *Id.* at ¶ 13. Neither the verdict form nor the trial court's verdict entry mentioned the degree of the offense. *Id.* They also did not mention that the records involved were governmental records. *Id.* Instead, the verdict forms simply referred to the tampering with records offense "as charged in the indictment." Under these circumstances, the court held that Pelfrey could only be convicted of a misdemeanor. Reference to the indictment was not sufficient to comply with R.C. 2945.75(A). *Id.* at ¶ 14.

**{¶13}** In this case, both verdict forms contained "further findings," which stated:

> We, the Jury in this case, find the Defendant, Terrence Kilbane, guilty of Operating Under the Influence, as charged in count one of the Indictment, and we further find that Defendant was previously convicted of Driving While Under the Influence, to-wit: the said Terrence Kilbane, with counsel, on or about the 22nd day of May, 2003, in the Court of Common Pleas, Cuyahoga County, Ohio, Case Number CR-431408, having been convicted of the crime of Driving Under the Influence, in violation of Revised Code Section 4511.19, of the State of Ohio.

**{¶14}** *Pelfrey* makes clear that, in the absence of the degree of the offense that the defendant is convicted, the jury verdict form must include "a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." This is the express requirement of R.C. 2945.75(A). In *Pelfrey*, the court recognized that failure to strictly comply with R.C. 2945.75(A) requires a reviewing court to treat the guilty verdict as a "'finding of guilty of the least degree of the offense charged.'" *Id.* at ¶ 13, quoting R.C. 2945.75(A)(2).

**{¶15}** The verdict form that was at issue in *Pelfrey* is distinctively different than the ones at issue in this case. In *Pelfrey*, aside from the verdict form not mentioning the degree of the offense at issue, the form was *completely silent* as to the aggravating element, i.e., that the tampering with records involved governmental records. This is not at issue in this case. Here, the jury verdict forms contain a statement of the additional element to justify convicting Kilbane of the greater degree of the offense.

**{¶16}** The verdict forms at issue contain "further findings" that expressly required the jury to find that the aggravating element was present. Although the verdict forms do not use the word "felony" to describe the past DUI conviction, the parties specifically chose to refer to the prior felony DUI by its specific case number and Kilbane's date of conviction. Notably, Kilbane does not even dispute that Case No. CR-02-431408 was a felony conviction of DUI — a fact that the jury was expressly instructed upon and presumed to have followed. The use of the specific case number in this case was

synonymous with referring to the case more broadly as a felony, and therefore, the verdict forms contain the necessary degree-raising element to comply with R.C. 2945.75(A)(2).

{¶17} Further, while *Pelfrey* is the seminal case on the application of R.C. 2945.75(A)(2), the Ohio Supreme Court has subsequently provided us with conflicting guidance on this statute. In *Pelfrey*, despite the defendant having not raised any issue related to the verdict forms during the trial court proceedings, the court did not engage in a plain-error analysis. The holding in *Pelfrey* implies that failure to strictly comply with R.C. 2945.75(A)(2) always constitutes plain error. Five years later, however, the Ohio Supreme Court in *State v. Eafford,* 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, reversed this court for strictly applying *Pelfrey* to a challenge of a jury verdict form under R.C. 2945.75(A), and found that the alleged defect in the jury verdict was not plain error based on other circumstances during the proceedings. Courts since then, including this court, have been trying to reconcile the conflicting opinions of *Pelfrey* and *Eafford. See, e.g., State v. Melton*, 8th Dist. Cuyahoga No. 97675, 2013-Ohio-257 (recognizing a distinction between the plain-error doctrine in *Eafford* and *Pelfrey*). And while the Ohio Supreme Court arguably abandoned its reasoning in *Eafford* in its recent decision of *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, the court still did not expressly overrule *Eafford*, which appears to be binding precedent.

{¶18} Here, Kilbane never objected to the jury verdict forms at trial, and therefore has forfeited all but plain error. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest

miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Crim.R. 52(B) places the following three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial: (1) there must be error; (2) the error must be an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. The Ohio Supreme Court has interpreted the third limitation of the rule "to mean that the trial court's error must have affected the outcome of the trial." *Id.* In other words, plain error requires that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 431, 678 N.E.2d 891 (1997).

{¶19} Even if we agreed with Kilbane that the jury verdict forms were defective, they do not rise to plain error. First, the absence of the single word "felony" when the parties specifically identified the prior felony DUI conviction by its specific case number does not constitute an obvious error. Second, there is no basis to conclude that the inclusion of the single word "felony" would have changed the outcome of the proceedings. The record reveals that Kilbane admitted at trial that his prior conviction was a felony violation of R.C. 4511.19, the parties stipulated to this same fact, and the jury was expressly instructed as to the felony nature of Kilbane's prior DUI conviction. The jury's finding in this case leaves no doubt that the jury found that Kilbane had previously been convicted of a felony DUI even in the absence of the word "felony" on the verdict forms.

**{¶20}** The first assignment of error is overruled.

Sufficiency of the Evidence

**{¶21}** In the second assignment or error, Kilbane argues there was insufficient evidence to sustain a conviction in Count 1 because the evidence failed to prove that his driving was impaired by the consumption of alcohol. He contends there were no indicia of bad driving other than Kilbane's failure to stop at a stop sign and that rolling through a stop sign, by itself, does not indicate impairment.

**{¶22}** Crim.R. 29(A) provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶23}** In Count 1 of the indictment, Kilbane was charged with DUI in violation of R.C. 4511.19(A)(1)(a), which states, in relevant part, that "[n]o person shall operate any vehicle * * * if, at the time of the operation" * * * [t]he person is under the influence of alcohol." In DUI prosecutions, the state is not required to prove that the defendant's driving was indicative of impairment. *State v. Hess*, 9th Dist. Wayne No. 12CA0064, 2013-Ohio-4268, ¶ 8. Proof of impaired driving ability is sufficient. *Id*. To prove

impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired. *State v. Clark*, 8th Dist. Cuyahoga No. 88731, 2007-Ohio-3777, ¶ 13.

{¶24} Rancourt testified that he immediately noticed Kilbane's speech was slurred, his eyes were glassy, and his breath smelled of alcohol. Kilbane admitted drinking "two beers." Rancourt also testified that the results of a nystagmus test, a one-legged stand test, and the walk-and-turn test indicated that Kilbane was "under the influence." In the nystagmus test, Rancourt observed involuntary movements in both of Kilbane's eyes. Kilbane also had difficulty balancing during the one-legged stand test and the walk-and-turn test. Rancourt described Kilbane's condition as follows:

Q: What factors did you take into consideration in your determination to arrest Mr. Kilbane for this crime?

A: A couple of different factors, of course. First, the observation of his stop or attempt to stop at the stop sign. Second would be the fact that he was attempting to conceal something under his jacket that later turned out to be an open container of alcohol. Third, the fact that he stated he had been drinking. I also took into consideration the odor of alcoholic beverages on his breath, his glassy bloodshot eyes, slurred speech. And then I looked for specific indicators while I administered the field sobriety tests.

{¶25} With respect to the walk and turn test, Rancourt explained:

While giving Mr. Kilbane the instructions, he was failing to maintain his balance. He used his arms for balance, meaning he raised his arms up, against more than six inches. He took the incorrect number of steps, and he also lost his balance or turned incorrectly, more so lose his balance, but instead of taking the pivot type steps that I showed just a minute ago, he began walking at one point, even walking backwards in a — I don't know if you would call it a 180 degrees, and then turned again and began walking.

Evidence of Kilbane's performance on the field sobriety tests together with his admission that he had been drinking, his slurred speech and glassy eyes, and the fact that he failed to stop at a stop sign was sufficient to prove that Kilbane was impaired while operating his motor vehicle.

{¶26} Therefore, the second assignment of error is overruled.

<u>Right of Confrontation and Hearsay</u>

{¶27} In the third assignment of error, Kilbane argues the trial court committed plain error when it allowed Forkins to testify from certain documents relating to the calibration of the breathalyzer that were prepared by another police officer. He contends this testimony constituted inadmissible hearsay and violated his constitutional right of confrontation.

{¶28} Kilbane failed to raise this issue at trial, and therefore waived all but plain error. *See* Crim.R. 52(B).

{¶29} Hearsay is an out of court statement offered to prove the truth of the matter asserted. Evid.R. 801(C). Whenever the state seeks to introduce hearsay into a criminal proceeding, the court must determine not only whether the evidence fits within an exception, but also whether the introduction of such evidence offends an accused's right to confront witnesses against him.[1] In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct.

---

[1] The Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause applies to exclude "testimonial" as opposed to "non-testimonial" hearsay. *Id*. at paragraph (a) of the syllabus.

{¶30} Although the *Crawford* court did not define "testimonial," it discussed three possible definitions of that term, which include (1) ex parte in-court testimony or its functional equivalent, such as affidavits and prior testimony that the defendant was unable to cross-examine, or pretrial statements that declarants would reasonably be expected to be used in a prosecution; (2) extrajudicial statements contained in formal testimonial materials such as depositions, prior testimony, or confessions; and (3) statements made under circumstances that would lead an objective witness to believe the statement would be available for use at a later trial. *Id*. at ¶ 51-52.

{¶31} Generally, statements contained in documents constitute inadmissible hearsay unless the author of the document is available to testify about them or the document qualifies as an exception to the hearsay rule. Evid.R. 803; *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 21-22. As applicable here, the business records exception excepts business records from exclusion at trial "if they are made in the course of a regularly conducted business activity because the courts presume that such records are trustworthy given the self-interest to be served by the accuracy of such entries." *Id*., citing *Weis v. Weis*, 147 Ohio St. 416, 425, 72 N.E.2d 245 (1947).

{¶32} To qualify for the business records exception, a record must meet the following criteria: (1) the record must be one recorded regularly in a regularly conducted

activity; (2) a person with knowledge of the act, event, or condition recorded must have made the record; (3) it must have been recorded at or near the time of the act, event, or condition; and (4) the party who seeks to introduce the record must lay a foundation through testimony of the record custodian or some other qualified witness. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171. Thus, the rationale underlying the business records exception to the hearsay rule is that

> the inherent reliability of business records is "supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation."

*United States v. Wells*, 262 F.3d 455, 462 (5th Cir.2001), quoting Fed.R.Evid. 803(6), Notes of Advisory Committee on Proposed Rules.

{¶33} In *Crawford*, 541 U.S. 36, 124 S.Ct. 1354, the court held that business records are generally not testimonial, and therefore are not subject to exclusion under the Confrontation Clause. *Id.* at 56. In *Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 324, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the United States Supreme Court held that business records are

> generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because — having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial.

*Id*. at 324. However, the *Melendez-Diaz* court further held that analysts' affidavits identifying certain evidence as cocaine could not be admitted at trial absent confrontation because they were prepared for use in trial against the defendant. *Id*. at 321.

**{¶34}** In this case, it was foreseeable that the calibration records for the breathalyzer could be used for trial. However, these records were not generated specifically for use in trial against Kilbane or any other particular defendant. They are simply periodic calibration and maintenance records that were updated two days before Kilbane was arrested. Forkins testified that the Datamaster must be checked once every seven days to ensure that it is working properly and that records of these "checks" are "kept in the normal course of the Rocky River Police Department's business." While the results of Kilbane's breathalyzer test would be testimonial because they were obtained for purposes of prosecution, records of routine maintenance of the breathalyzer are not testimonial.[2]

**{¶35}** Accordingly, we overrule the third assignment of error.

Ineffective Assistance of Counsel

**{¶36}** In the fourth assignment of error, Kilbane argues he was denied the effective assistance of counsel because his trial counsel failed to object to the admission of hearsay evidence regarding the calibration records.

**{¶37}** To prevail on a claim for ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient, and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *State v.*

---

[2] Other courts have reached the same conclusion with respect to calibration records of breathalyzer machines. *See, e.g., Bohsancurt v. Eisenberg*, 212 Ariz. 182, 129 P.3d 471 (Ariz.App.2006) (holding calibration records for breathalyzer machine were nontestimonial business records); *Commonwealth v. Zeininger*, 459 Mass. 775, 947 N.E.2d 1060 (2011); *State v. Fitzwater*, 122 Haw. 354, 227 P.3d 520 (2010).

*Ford*, 8th Dist. Cuyahoga Nos. 88946 and 88947, 2007-Ohio-5722, ¶ 9, citing *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We have also held that the failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial. *Id.,* citing *State v. Henderson*, 8th Dist. Cuyahoga No. 88185, 2007-Ohio-2372.

{¶38} An objection to the admission of the calibration records would have been a futile act. As previously explained, the calibration records were created in the ordinary course of business and were admissible under the business records exception to the hearsay rule. The testimony regarding the contents of the calibration records did not violate Kilbane's right of confrontation because they were nontestimonial. Therefore, even if Kilbane's trial counsel had objected to testimony about the calibration records, the objection would have been overruled. Kilbane was not unfairly prejudiced by the admission of these business records.

{¶39} Therefore, the fourth assignment of error is overruled.

{¶40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the common pleas court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.


_____
MARY J. BOYLE, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
SEAN C. GALLAGHER, J., CONCUR