[Cite as *State v. Pierce*, 2017-Ohio-8578.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 105389

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOHNNIE PIERCE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, MODIFIED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-596666-A

**BEFORE:** Celebrezze, J., Keough, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 16, 2017

**ATTORNEY FOR APPELLANT**

Paul A. Mancino, Jr.
Mancino Mancino & Mancino
75 Public Square Building, Suite 1016
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Andrea N. Isabella
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Johnnie Pierce ("Pierce"), brings this appeal challenging his convictions and the trial court's sentence for escape and two counts of harassment by inmate. Specifically, Pierce argues that (1) he should have been convicted of fifth-degree felony escape because the jury verdict form did not indicate that the most serious offense for which he was under detention was a felony of the third, fourth, or fifth degree; (2) his due process rights were violated when the trial court denied defense counsel's *Batson* challenge and failed to provide an intoxication instruction to the jury; and (3) his harassment by inmate convictions were not supported by sufficient evidence. After a thorough review of the record and law, this court affirms in part, modifies in part, and remands for further proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶2} On June 12, 2015, Cleveland Police Officers responded to radio call for males fighting near the intersection of Prospect Avenue and East 4th Street. Upon arrival at the scene, officers encountered Pierce, who appeared to be intoxicated, disheveled, and confrontational. Pierce was standing in the vicinity of a broken chair and a broken glass window. When the officers approached Pierce, he made obscene and threatening remarks. The decision was made to detain Pierce based on the officers' belief that he had been involved in the fight and his proximity to the broken chair and glass window. Pierce was detained for vandalism and disorderly conduct while intoxicated.

{¶3} Pierce began vomiting and urinating in the backseat of the police car. The officers became concerned that Pierce was highly intoxicated or experiencing an overdose, and decided to take him to St. Vincent Charity Hospital for treatment.

{¶4} After Pierce was treated, the officers transported him from the hospital to the police car in a wheelchair. Pierce suddenly jumped out of the chair and attempted to flee the area on foot. The officers eventually caught up to Pierce and brought him to the ground. Pierce continued to fight the officers, attempting to strike them with his elbows and feet. Furthermore, he attempted to bite the officers and began spitting at them. Pierce received additional medical treatment for the injuries that he sustained during the altercation with the officers.

{¶5} In Cuyahoga C.P. No. CR-15-596666-A, the Cuyahoga County Grand Jury returned a seven-count indictment charging Pierce with felonious assault, a first-degree felony in violation of R.C. 2903.11(A)(1) with a furthermore specification alleging that the victim was a peace officer; vandalism, a fifth-degree felony in violation of R.C. 2909.05(B)(1)(b); escape, a third-degree felony in violation of R.C. 2921.34(A)(1); assault, a fourth-degree felony in violation of R.C. 2903.13(A) with a furthermore specification alleging that the victim was a peace officer; two counts of harassment by inmate, fifth-degree felonies in violation of R.C. 2921.38(B); and resisting arrest, a second-degree misdemeanor in violation of R.C. 2921.33(A). Pierce was arraigned on July 30, 2015. He pled not guilty to the indictment.

{¶6} A jury trial commenced on October 17, 2016. Cleveland Police Officers Justen Davis, Aaron Petitt, and Christopher Hoover testified on behalf of the state. At the close of the state's evidence, defense counsel moved for a Crim.R. 29 judgment of acquittal. The trial court granted defense counsel's motion on the vandalism offense charged in Count 2; the court denied the motion on all other counts. The defense rested after calling one witness, and renewed the Crim.R. 29 motion, which the trial court denied.

{¶7} On October 21, 2016, the jury found Pierce not guilty on the felonious assault, assault, and resisting arrest counts. The jury found Pierce guilty on the escape count and both

counts of harassment by inmate. On October 26, 2016, the trial court referred Pierce to the probation department for a presentence investigation report and set the matter for sentencing.

{¶8} The trial court held a sentencing hearing on December 20, 2016. The trial court imposed a prison sentence of two years on the escape count and one year on each of the harassment by inmate counts. The trial court ordered the counts to run concurrently.

{¶9} On January 20, 2017, Pierce filed the instant appeal challenging his convictions and the trial court's sentence. He assigns four errors for review:

> I. [Pierce] was denied due process of law when he was sentenced for a felony of the third degree when there was no determination by the jury as to what the underlying offense was for the offense of escape.
> II. [Pierce] was denied due process of law when the court failed to state [Pierce's] *Batson* challenge.
>
> III. Defense was denied due process of law when the court, on its own, did not instruct the jury on intoxication.
>
> IV. [Pierce] was denied due process of law when he was convicted of harassment
>
> by an inmate.

## II. Law and Analysis

### A. Verdict Form

{¶10} In his first assignment of error, Pierce challenges his conviction for third-degree felony escape. Specifically, Pierce argues that the jury verdict form omitted the required finding under R.C. 2921.34(C)(2)(b) that makes the offense a third-degree felony. As such, he argues that he could only be convicted of fifth-degree felony escape.

{¶11} Pierce was charged with escape in violation of R.C. 2921.34(A)(1), which provides, in relevant part, that "[n]o person, knowing the person is under detention, * * * or being reckless in that regard, shall purposely break or attempt to break the detention[.]"

Pursuant to R.C. 2921.34(C)(2), the degree of the offense of escape is determined by the most serious offense for which the offender was under detention at the time of the offense. Escape is a felony of the second degree "when the most serious offense for which the person was under detention * * * is aggravated murder, murder, or a felony of the first or second degree[.]" Escape is a felony of the third degree "when the most serious offense for which the person was under detention * * * is a felony of the third, fourth, or fifth degree or an unclassified felony[.]" Escape is a felony of the fifth degree when "[t]he most serious offense for which the person was under detention is a misdemeanor."

{¶12} Count 3 alleged that Pierce "did, knowing [he was] under detention, * * * purposely break or attempt to break the detention, * * * and [the] offense for which [Pierce] was under detention * * * was a felony of the third, fourth, or fifth degree[.]" This language elevated the escape offense from a fifth-degree felony to a third-degree felony.

{¶13} The trial court instructed the jury on the offense-enhancing language:

Before you can find [Pierce] guilty of escape, you must find beyond a reasonable doubt that one or about the 12th day of June, 2015, in Cuyahoga County, Ohio, [Pierce] did, knowing he was under detention, * * * purposely break or attempt to break the detention, * * * and the offense for which [Pierce] was under detention was a felony of the third, fourth, or fifth degree, or unclassified felony.

(Tr. 580.) However, the verdict form on which the jury found Pierce guilty did not include a degree for the escape offense nor the aggravating element that elevated the offense from a fifth- to a third-degree felony. The verdict form on which the jury found Pierce guilty provided, in relevant part: "We the jury in this case, * * * do find [Pierce] guilty of escape, in violation of 2921.34(A)(1) of the Ohio Revised Code as charged in Count Three of this indictment." (Tr. 648-649.)

{¶14} R.C. 2945.75(A) provides:

When the presence of one or more additional elements makes an offense one of more serious degree: * * * (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶15} In the instant matter, Pierce argues that the jury did not find that the most serious offense for which he was under detention was a felony of the third, fourth, or fifth degree. Pierce contends that the jury merely found that he was guilty of escape as charged in the indictment.

{¶16} In support of his argument, Pierce directs this court to *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735. In *Pelfrey*, the Ohio Supreme Court held that "[p]ursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *Id.* at syllabus. If the verdict form fails to state either the degree of the offense or state that an additional element is present, R.C. 2945.75(A)(2) provides that "a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." *Pelfrey* at ¶ 13.

{¶17} The state, on the other hand, directs this court to *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891. In *Eafford*, the Ohio Supreme Court "reversed this court for strictly applying *Pelfrey* to a challenge of a jury verdict form under R.C. 2945.75(A), and found that the alleged defect in the jury verdict was not plain error based on other circumstances during the proceedings." *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 17. The court looked beyond the jury verdict form and considered the whole record. Although the jury verdict form did not state the degree of the drug possession

offense or the aggravating circumstance, the court held that the alleged defect in the jury verdict form did not constitute plain error because (1) the indictment charged the defendant with possessing cocaine, (2) the verdict form reflected a finding of guilty as charged in the indictment, (3) the evidence presented at trial only related to possession of cocaine, and (4) the trial court instructed the jury that it could not find the defendant guilty of drug possession unless it found the drug involved to be cocaine. *Eafford* at ¶ 17.

{¶18} In the instant matter, the state argues that the additional element — that Pierce committed the escape offense while the most serious offense for which he was under detention was a felony of the third, fourth, or fifth degree — was alleged in the indictment and the jury verdict form reflected a finding of guilty "as charged in Count Three of [the] indictment." Furthermore, the state contends that the evidence presented at trial established that Pierce had been detained for vandalism, a fifth-degree felony, at the time he committed the escape offense. Officer Davis testified that Pierce was detained for vandalizing the apartment door's glass window, a fifth-degree felony. (Tr. 292, 304.) Finally, the state emphasizes that the trial court instructed the jury that it could not find Pierce guilty of escape unless it found that he committed the offense while under detention for a third-, fourth-, or fifth-degree felony.

{¶19} The state does not address the effect of the Ohio Supreme Court's most recent pronouncement on the issue of compliance with R.C. 2945.75(A)(2) in *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374. In *McDonald*, the court made clear that "in cases involving offenses for which the addition of an element or elements can elevate the offense to a more serious degree, *the verdict form itself is the only relevant thing to consider* in determining whether the dictates of R.C. 2945.75 have been followed." (Emphasis added.) *Id.* at ¶ 17, citing *Pelfrey,* 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, at ¶ 14. The court

emphasized that "we look *only to the verdict form* signed by the jury to determine whether, pursuant to R.C. 2945.75, [the defendant] was properly convicted of a third-degree felony." (Emphasis added.) *McDonald* at ¶ 18. The court further explained,

> "[t]he express requirement of [R.C. 2945.75(A)(2)] cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment, or by presenting evidence to show the presence of the aggravated element at trial or incorporation of the indictment into the verdict form[.]"

*Id*. at ¶ 17, quoting *Pelfrey* at ¶ 14.

{¶20} This court has recognized that *Pelfrey*, *Eafford*, and *McDonald* provide "conflicting guidance" regarding the application of R.C. 2945.75(A)(2). *Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, at ¶ 17. In *Kilbane*, this court attempted to reconcile the three holdings. This court applied the strict compliance analysis from *Pelfrey* and *McDonald*, and concluded that the jury verdict forms contain "a statement of the additional element to justify convicting Kilbane of the greater degree of the offense" and "'further findings' that expressly required the jury to find that the aggravating element was present." *Id*. at ¶ 15-16. Furthermore, this court applied the plain error analysis from *Eafford*, and concluded that even if the jury verdict forms were defective, they did not constitute plain error. *Id*. at ¶ 19.

{¶21} In the instant matter, the jury verdict form fails under a strict compliance analysis. The jury verdict form did not state the degree of the escape offense, nor did it state the most serious offense for which Pierce was under detention when he committed the escape offense.

{¶22} After reviewing the record, we find this case to be distinguishable from *Eafford*. The charge in *Eafford*, possession of cocaine, did not involve any additional elements that elevated the level of the offense. The verdict form described the offense as "possession of drugs," but the only drug involved was cocaine.

Therefore, possession of cocaine was necessarily what the jury found the defendant guilty of.

*State v. Melton*, 2013-Ohio-257, 984 N.E.2d 1112, ¶ 31 (8th Dist.).

**{¶23}** Here, the escape charge involved an additional element — that Pierce committed the offense while under detention for a third-, fourth-, or fifth-degree felony — that elevated the level of the offense from a fifth-degree felony to a third-degree felony. Furthermore, as noted above, Pierce had been detained for multiple offenses at the time he committed the escape offense.

**{¶24}** Based on the foregoing analysis, we find the mandates of *McDonald* and *Pelfrey* to be controlling. As such, we consider only the verdict form itself in determining whether there was compliance with R.C. 2945.75. *Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, at ¶ 14; *McDonald,* 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, at ¶ 17. It is evident that the dictates of the statute were not followed. The jury verdict form did not state the degree of the escape offense, nor did it state the most serious offense for which Pierce was under detention when he committed the escape offense.

**{¶25}** Accordingly, Pierce's conviction for escape should be reduced to a fifth-degree felony in order to conform to the jury's verdict form. Pierce's first assignment of error is sustained.

## B. *Batson* Challenge

**{¶26}** In his second assignment of error, Pierce, who is African American, argues that his constitutional rights were violated when the trial court allowed the state to peremptorily excuse prospective Juror 6[1] over defense counsel's *Batson* objection.   We disagree.

**{¶27}** In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court limited the prosecution's discretion in the use of peremptory challenges during jury selection.   The court held that purposeful discrimination in the use of peremptory challenges to exclude members of a minority group violates the Equal Protection Clause of the United States Constitution.   *Id*. at 89.

**{¶28}** The court developed a three-part test for trial courts to apply when adjudicating a *Batson* challenge:

> First, a defendant must make a prima facie case that the prosecutor is engaged in racial discrimination.   *Id*. at 96-97.   Second, if the defendant satisfies that burden, the prosecutor must provide a racially neutral explanation for the challenge.   *Id*. at 97-98.   Finally, the court must decide, based on all the circumstances, whether the defendant has proved purposeful racial discrimination.    *Id*. at 98.   In doing so, the court must consider the circumstances of the challenge and assess the plausibility of the prosecutor's explanation in order to determine whether it is merely pretextual.

*State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 21, citing *Miller-El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 65.

> "A trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous."   *State v. Pickens*, 141 Ohio St.3d 462,

---

[1] Prospective Juror 6's nationality and race are unclear from the record.   Defense counsel suggested that she is African American; the trial court opined that she is Latin American; and the prosecutor opined that she is Hispanic.

2014-Ohio-5445, 25 N.E.3d 1023, ¶ 64, citing *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 64. This deferential standard arises from the fact that step three of the *Batson* inquiry turns largely on the evaluation of credibility by the trial court. *See State v. Herring*, 94 Ohio St.3d 246, 257, 2002-Ohio-796, 762 N.E.2d 940, citing *Batson*, 476 U.S. at 98, 106 S.Ct. 1712, 90 L.Ed.2d 69.

*State v. Murray*, 8th Dist. Cuyahoga No. 102779, 2016-Ohio-107, ¶ 22.

{¶29} In the instant matter, following the state's use of its first peremptory challenge to remove prospective Juror 6, defense counsel raised a *Batson* challenge, explaining, "I'm suggesting that this was a preemptive strike based on race. This young lady was a woman of color. My client is a person of color, and I believe that it is no longer necessary to show a pattern where there is no rational basis for excluding a juror, and I don't see that there was a rational basis for excluding this juror number 6." (Tr. 170.)

{¶30} The trial court noted that it was unclear whether prospective Juror 6 was African or Latin American. Nevertheless, the trial court reviewed the three-part test set forth in *Batson* with the parties and provided the state with an opportunity to respond.

{¶31} In response to defense counsel's *Batson* challenge, the prosecutor noted that he was also a person of color and that there were still "numerous persons of color" on the jury. (Tr. 170.) The prosecutor argued that defense counsel failed to make a prima facie case that the state engaged in racial discrimination based on the fact that both the parties and the trial court were unable to determine the nationality or race of prospective Juror 6. The prosecutor opined that prospective Juror 6 was Hispanic rather than African American.

{¶32} The trial court inquired as to whether the state had a race-neutral reason for removing the juror. The prosecutor provided the following reasons for excusing prospective Juror 6:

There are a number of reasons. One of the reasons is that during the state's initial questioning of the panel, juror number 6 would not make eye contact with the State of Ohio.

Additionally, during the court's examination of the witness, the State of Ohio noted that juror number 6 did not like to make eye contact with the court, and was, in general, just not involved in the process and showed a demeanor that she did not want to be present or participate.

Further, your Honor, on the State of Ohio's questioning during the voir dire, juror number 6 did indicate that both of her parents were in jail at some point on drug charges.

And so when juror number 6 elucidated those facts, it kind of clarified for the State of Ohio the feeling of mistrust there was that the State of Ohio was getting from her.

(Tr. 174-175.)

**{¶33}** The trial court rejected defense counsel's *Batson* challenge based on the prosecution's explanation of its basis for excusing prospective Juror 6. The trial court noted on the record that the juror who replaced prospective Juror 6 was also an African American female.

**{¶34}** Pierce appears to argue that the state failed to provide a race-neutral explanation to exclude prospective Juror 6. Furthermore, Pierce emphasizes that although prospective Juror 6's parents had been charged with drug-related offenses in the past, she indicated that her parents' experiences would not affect her ability to be fair to the prosecution or the defense. (Tr. 75.)

**{¶35}** After reviewing the record, we cannot say that the trial court's denial of defense counsel's *Batson* challenge was clearly erroneous. After defense counsel objected to the state's removal of prospective Juror 6, the trial court thoroughly reviewed the *Batson* three-part test and gave the prosecution an opportunity to provide its reasons for excusing the juror. The

prosecutor provided permissible race-neutral justifications for exercising its peremptory challenge. In denying defense counsel's *Batson* challenge, the trial court evidently concluded that Pierce failed to prove purposeful racial discrimination. Accordingly, we defer to the trial court's resolution of defense counsel's *Batson* challenge.

**{¶36}** Pierce's second assignment of error is overruled.

### C. Intoxication Jury Instruction

**{¶37}** In his third assignment of error, Pierce argues that his due process rights were violated when the trial court did not sua sponte provide the jury with an instruction on intoxication.

**{¶38}** A "trial court has discretion to determine whether the evidence is sufficient to require a jury instruction on intoxication." *State v. Nields*, 93 Ohio St.3d 6, 22, 752 N.E.2d 859 (2001), citing *State v. Wolons*, 44 Ohio St.3d 64, 541 N.E.2d 443 (1989). "Although an appellate court normally reviews alleged errors in jury instructions for an abuse of discretion, when a defendant does not request a specific jury instruction and fails to object to the jury instructions as given, he waives all but plain error." *State v. Robinson*, 8th Dist. Cuyahoga No. 102766, 2016-Ohio-808, ¶ 9, citing *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 15.

**{¶39}** Pursuant to Crim.R. 52(B), appellate courts may notice a plain error affecting a substantial right even though it was not brought to the attention of the trial court. An error only rises to the level of plain error if but for the error, the outcome of the proceedings would have been different. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only

to prevent a manifest miscarriage of justice." *Long* at *id*.

{¶40} Pierce argues that the trial court should have provided an instruction on intoxication to the jury based on the officers' testimony that Pierce was intoxicated. Pierce acknowledges that voluntary intoxication is not a defense to the crimes with which he was charged. However, he asserts that the jury should have been instructed on intoxication pursuant to R.C. 2901.21(E), governing criminal liability and culpability, which provides, in relevant part, that "[e]vidence that a person was voluntarily intoxicated may be admissible to show whether or not the person was physically capable of performing the act with which the person is charged."

{¶41} This court has held that a defendant may not receive a jury instruction when the instruction is inconsistent with the theory of the defense. *State v. Rose*, 8th Dist. Cuyahoga No. 89457, 2008-Ohio-1262, ¶ 18, citing *State v. King*, 20 Ohio App.3d 62, 64, 484 N.E.2d 234 (1st Dist.1984), and *State v. Catlin*, 56 Ohio App.3d 75, 79, 564 N.E.2d 750 (2d Dist.1990).

{¶42} In the instant matter, defense counsel's theory at trial was that Pierce was not under arrest when he was taken to the hospital for treatment, and thus, he could not have committed the offense of escape. At no point did the defense argue or suggest that Pierce was intoxicated to the point that he was physically incapable of committing the felonious assault, vandalism, escape, assault, harassment by inmate, and resisting arrest offenses with which he was charged.

{¶43} Furthermore, we cannot say that the record contains sufficient evidentiary support to warrant a jury instruction on intoxication. It is undisputed that Pierce was intoxicated on the night in question. Although Pierce told the officers that he needed a wheelchair when he was leaving the hospital, Officer Petitt testified that Pierce "had walked [into the hospital] on his own free will, unassisted. (Tr. 346.) Officer Davis testified that he was "in awe" and "taken aback" by the high rate of speed at which Pierce was running from the officers. (Tr. 296-297.)

**{¶44}** Based on the foregoing analysis, we cannot say that the trial court committed plain error by failing to provide the jury with an instruction on intoxication. Accordingly, Pierce's third assignment of error is overruled.

### D. Sufficiency

**{¶45}** Although the caption of Pierce's fourth assignment of error alleges a due process violation, it is evident that he is raising a challenge to the sufficiency of the evidence supporting his convictions for harassment by inmate.

**{¶46}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶47}** Pierce was convicted of harassment by inmate in violation of R.C. 2921.38(B), which provides,

> [n]o person, with intent to harass, annoy, threaten, or alarm a law enforcement officer, shall cause or attempt to cause the law enforcement officer to come into contact with blood, semen, urine, feces, or another bodily substance by throwing the bodily substance at the law enforcement officer, by expelling the bodily substance upon the law enforcement officer, or in any other manner.

**{¶48}** In support of his sufficiency challenge, Pierce argues that there was no evidence that he intended to harass, annoy, threaten, or alarm the officers. He appears to suggest that the transfer of blood was accidental or incidental rather than deliberate. Furthermore, Pierce argues that the state failed to prove that the blood on Officers Petitt and Hoover belonged to him.

**{¶49}** The record reflects that the state presented sufficient evidence to support Pierce's

convictions. First, Officer Davis testified that Pierce was spitting at the officers. (Tr. 301.) Officer Davis asserted that Pierce had blood in his mouth. Officer Davis testified that Officer Hoover "was spitted [sic] upon; bodily contamination." (Tr. 303.) As a result of Pierce's conduct, officers placed a spit bag on Pierce.

{¶50} Second, Officer Petitt testified that Pierce "began to bite and spit at both Officer Hoover and I." (Tr. 355.) Officer Petitt explained, "[w]hen we were able to gain control of [Pierce's] hands, he then turned and started biting at us, and spitting saliva and blood and anything else he could do to try to hit us or hurt us." (Tr. 356.) Officer Petitt stated that Pierce "spat several times," and that Pierce was spitting purposefully. He testified that blood came from Pierce's mouth. Officer Petitt asserted that he was contacted by Pierce's spit and blood. Officers placed a spit mask on Pierce.

{¶51} Third, Officer Hoover testified that a spit mask was placed on Pierce because he was spitting on him and Officer Petitt. Officer Hoover confirmed that he was hit by Pierce's spit, and that the spit got on his uniform.

{¶52} The testimony of Officers Davis, Petitt, and Hoover, if believed, is sufficient to establish that Pierce caused the officers to come into contact with his blood by expelling the spit and blood in his mouth upon the officers. Accordingly, Pierce's convictions for harassment by an inmate are supported by sufficient evidence.

{¶53} Pierce's fourth assignment of error is overruled.

### III. Conclusion

{¶54} After thoroughly reviewing the record, we find that the jury's verdict form for the escape offense failed to comply with R.C. 2945.75 because it did not state the degree of the offense nor state that an aggravating element was found. Thus, we reduce Pierce's escape

conviction to a fifth-degree felony. The trial court's sentence for third-degree felony escape is vacated, and the matter is remanded to the trial court for the limited purpose of resentencing Pierce on the fifth-degree felony escape conviction.

{¶55} We affirm the trial court's judgment in all other respects. We cannot say that the trial court's ruling denying defense counsel's *Batson* challenge was clearly erroneous. The trial court did not commit plain error by failing to provide the jury with an intoxication instruction. Pierce's convictions for harassment by inmate are supported by sufficient evidence.

{¶56} Judgment affirmed in part, modified in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

KATHLEEN ANN KEOUGH, A.J., and
SEAN C. GALLAGHER, J., CONCUR